**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Fabian Jose JIMENEZ–MEDINA,**
**Defendant–Appellant.**

**No. 97–10055.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 11, 1999.

Filed May 6, 1999.

Dennis Jones, Phoenix, Arizona, for the defendant-appellant.

James Burke, Assistant United States Attorney, Phoenix, Arizona, for the plaintiff-appellee.

Before: NOONAN and TROTT, Circuit Judges, and MOLLOY,[1] District Judge.

MOLLOY, District Judge:

Fabian Jose Jimenez–Medina was sentenced to 55 months imprisonment following his plea of guilty to possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). The sole issue on appeal is whether reasonable suspicion existed for the investigatory stop that led to discovery of the illegal drugs. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we REVERSE.

**Discussion**

Jimenez–Medina was driving a Chevrolet pickup truck with Arizona plates west on Interstate 10 one hundred thirty miles from the Mexican border at approximately 11:15 p.m. on May 8, 1996. He was observed by Border Patrol Agent Robert Cole. Agent Cole first noticed·the pickup because it was traveling approximately 45–50 mph in an area posted with a 75 mph speed limit. Based on his eleven years of experience as a border patrol agent, eight of them patrolling in the area, Cole knew Interstate 10 was used as a route for alien smuggling. He also testified that open-bed pickups are often used to smuggle aliens across the border.

Agent Cole began to follow the pickup in his marked sedan and performed a regis-

1. The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

tration check. While waiting for this information, he observed the pickup weave within its lane, leading the agent to believe that the driver was preoccupied with the agent's presence. No traffic laws were broken.

The registration check showed that the pickup was registered to Mr. Jimenez of Agua Prieta, Sonora, Mexico, where there had been a recent increase in alien smuggling. This information led Agent Cole to conclude the pickup had "recent border access." A border patrol shift change takes place near 10:00 p.m., the approximate time Agent Cole guessed the pickup would have passed through Tucson if it had been continuously traveling on Interstate 10 at the observed speed. Agent Cole believed it was not uncommon for alien smugglers to pass through Tucson during shift changes in order to avoid detection.

The pickup had tinted windows, preventing the ability to see how many people were in the truck. Based upon the facts as interpreted by Agent Cole, he activated his lights and pulled the pickup over. Up to the point of the stop, Agent Cole had observed no illegal activity and knew in fact from physical observation of the open back that there were no persons in the back of the pickup.

### A. Standard of Review

Whether reasonable suspicion existed for an investigatory stop is a mixed question of law and fact reviewed de novo. *United States v. Garcia–Camacho*, 53 F.3d 244, 245 (9th Cir.1995).

### B. Reasonable Suspicion

The Fourth Amendment's prohibition of unreasonable searches and seizures extends to the brief investigatory stop of a vehicle. *United States v. Rodriguez*, 976 F.2d 592, 594 (9th Cir.1992), citing *U.S. v. Brignoni–Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). An officer may not detain a motorist without a showing of reasonable suspicion, which is "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *U.S. v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

In determining whether reasonable suspicion exists, the underlying facts are considered collectively and in light of the agent's experience in detecting alien smuggling operations. *United States v. Franco–Munoz*, 952 F.2d 1055, 1058 (9th Cir.1991). Reasonable suspicion cannot be based on "broad profiles which cast suspicion on entire categories of people without any individualized suspicion of the particular person being stopped." *United States v. Rodriguez–Sanchez*, 23 F.3d 1488, 1492 (9th Cir.1994). It must be based on facts and not the "mere subjective impressions of a particular officer." *United States v. Hernandez–Alvarado*, 891 F.2d 1414, 1416 (9th Cir.1989). While facts are to be interpreted in light of an officer's experience, "experience may not be used to give officers unbridled discretion in making a stop." *Id.*, citing *Nicacio v. United States I.N.S.*, 797 F.2d 700, 705 (9th Cir.1985).

### C. Analysis of the Factors Leading to the Stop

The dispositive factors giving rise to the officer's reasonable suspicion were a pickup having Arizona plates, registered to a Mexican national from an area where there had recently been an increase in smuggling. The government argues this information reasonably gave rise to Agent Cole's inference that the pickup had "recent border access." The logic of this syllogism does not work.

It is fair to say that a pickup having Arizona plates was seen by Agent Cole. It is also fair to say Agent Cole determined the pickup was legally registered to a Mexican national. No doubt the pickup crossed the border. Likewise, it is fair to say that the home place of the registered owner was known to have experienced an increase in smuggling. Nonetheless, it is a

quantum leap of logic to conclude that the pickup had "recent border access." There are no facts to substantiate this conclusion. Nothing in the record suggests a reasonable basis from which Agent Cole could draw the inference that is the linchpin of the government's argument. If this inference is gone, there is no reasonable basis from which Agent Cole could have inferred a reasonable suspicion about illegal conduct.

Agent Cole's decision to stop Mr. Jimenez–Medina's truck was arguably based on six factors: the type of vehicle, the slow speed of the vehicle, the driver's preoccupation, the vehicle registration, Interstate 10's reputation as a corridor for alien smuggling, and the time of evening. One need only consider these elements in the factual context of this court's precedent to arrive at the unavoidable conclusion that the cases do not support the government's position.

For instance, a driver's preoccupation with a police vehicle following him is a "quite natural reaction" and was held to be insufficient to justify an investigatory stop. *United States v. Robert L.,* 874 F.2d 701, 703 (9th Cir.1989). The slow speed of the vehicle, the driver's preoccupation, and the driver's residence in a neighborhood under investigation for narcotics activity did not support a finding of "reasonable suspicion." *Hernandez–Alvarado,* 891 F.2d at 1418. The type of vehicle, the driver's preoccupation, swerving within the lane of traffic, and the highway reputation for alien smuggling could not provide the legal foundation for "reasonable suspicion" in yet another case. *Rodriguez,* 976 F.2d at 596. The stop in *Rodriguez* was no good even with the additional fact that the car appeared heavily loaded. *Id.* The same holding prevailed in *Garcia–Camacho.* There this Court determined once again that the type of vehicle, the driver's preoccupation and the highway's reputation as a route for smuggling were inadequate to give rise to "reasonable suspicion" that would have allowed a proper stop. *Gar-*

*cia–Camacho,* 53 F.3d at 249. This court also frowned on speed of the vehicle as a basis for reasonable suspicion in *Garcia–Camacho,* pointing out that the government has argued both increases and decreases in speed constitute "suspicious" conduct, creating a "heads I win, tails you lose" trap for drivers who do not maintain constant speed. *Id.,* 53 F.3d at 247.

The law of this circuit teaches that the presence of such facts as driver preoccupation, slow speed, movement within one's own lane of traffic, and even coming from the wrong neighborhood do not give rise to legally sufficient "reasonable suspicion."

While it is true that some of the same factors present in this case have supported findings of reasonable suspicion in other cases, there are factual distinctions that make those cases inapplicable as authority here. For instance, the type of vehicle, the driver's preoccupation, and the reputation of the highway were held to support a finding of reasonable suspicion in two cases, *Franco–Munoz,* 952 F.2d 1055, and *Rodriguez–Sanchez,* 23 F.3d 1488. But, in both cases other facts leading to logical inferences, not hunches, made the finding of reasonable suspicion legally tenable.

In *Franco–Munoz,* the car was stopped in an area where aliens were known to be picked up, the car itself was heavily laden and obvious to the eye of the stopping officer, and it had a rental sticker in plain view. Agents knew rental cars were being used to transport illegal aliens. *Id.,* 952 F.2d at 1057. By contrast in this case, the pickup was legally traveling on the highway and known to have no aliens in the pickup bed based upon the agent's own observations when he drove up beside the truck. The pickup here was legally registered and properly licensed. Even if pickups were suspicious vehicles because it was known that aliens covered by cardboard or blankets were being smuggled in them, Agent Cole could see this was not the case in Jimenez–Medina's pickup bed.

In *Rodriguez–Sanchez* the key factor was the driver's sudden 75 mph acceleration to an off ramp when the agent pulled up beside him on the highway. *Rodriguez–Sanchez,* 23 F.3d at 1490. Notably the court held that type of vehicle, driver's preoccupation, highway reputation and time of day were insufficient by themselves to establish reasonable suspicion. *Id.,* at 1493. The rapid exit from the highway combined with weaving in and out of lanes without signaling justified the stop in *Rodriguez–Sanchez. Id.* It is a stretch to say suspicion can rest here on "weaving" because the record demonstrates only movement within the proper lane of travel.

In the case before us, none of the six factors taken alone, or collectively, rises to the level of legally recognized "reasonable suspicion" because the facts here do not support an inference that an offense was being, or had been, committed. The crux of the government's argument rests on Agent Cole's conclusion that since the pickup had Arizona plates but was registered to a resident of Mexico, the pickup had "recent border access." No other fact substantiates this conclusion. The record suggests no reasonable basis from which Agent Cole could draw such an inference. If this factor is gone, the rest of Agent Cole's reasonable suspicion topples like a house of cards. If the unsupported characterization of Jimenez–Medina's crossing as "recent" is taken from the equation in this case, there is no factual predicate to support what the law recognizes as reasonable suspicion.

## Conclusion

This Circuit has held that reasonable suspicion must not be based on "broad profiles which cast suspicion on entire categories of people." *Rodriguez–Sanchez,* 23 F.3d at 1492. The rationale upon which the "reasonable suspicion" doctrine is based, a doctrine that thwarts the notion of liberty and freedom from state intrusion in a mobile society, must be founded on an objective basis for suspecting that a partic-ular person is engaged in criminal activity, lest we "sweep many ordinary citizens into a generality of suspicious appearance merely on hunch." *Rodriguez,* 976 F.2d at 596. Reasonable suspicion can not rest upon the hunch of an experienced officer, even if the hunch turns out right. The requirement of objective fact to support an inference of wrongdoing eliminates the need to deal with a police stop that rests on constitutional intuition.

Accordingly, the district court's denial of the defendant's motion to suppress is REVERSED.

TROTT, Circuit Judge, dissenting:

Agent Cole's suspicion was based on six factors: the type of vehicle, the slow speed at which the vehicle was travelling, the driver's preoccupation, the vehicle's registration, Interstate 10's reputation as a corridor for alien smuggling, and the time of the evening when the stop took place. The majority holds that these factors, taken together, do not support a "reasonable suspicion" justifying a brief investigatory stop of a vehicle. I disagree.

The dispositive factor in this case is that the pickup, while having Arizona plates, was registered to a Mexican resident from an area where there had recently been an increase in alien smuggling. This is precisely the type of specific, articulable fact, which, together with objective and reasonable inferences, forms a reasonable basis for suspecting alien smuggling is afoot. *See U.S. v. Franco–Munoz,* 952 F.2d 1055, 1057 (9th Cir.1991) (holding that the fact that an area is "notorious" for alien smuggling supports reasonable suspicion).

The majority asserts that the vehicle's Mexican registration does not support a reasonable inference of "recent border access." Indeed, the majority refers to this as a "quantum leap in logic." It must be remembered, however, that reasonable suspicion need not be inconsistent with innocence. *Id.* Rather, "the relevant inquiry is not whether the particular conduct

is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *United States v. Sokolow*, 490 U.S. 1, 10, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quotation omitted). Border patrol agents, not courts, are trained to detect smugglers, and "[t]he facts are to be interpreted in light of a trained officer's experience." *U.S. v. Michael R.*, 90 F.3d 340, 346 (9th Cir.1996). The facts presented here support the conclusion that Agent Cole, in light of his eleven years of experience as a border patrol agent and his eight years patrolling Interstate 10, acted with reasonable suspicion. The district court's denial of the motion to suppress should be upheld, and I respectfully dissent.