**Marvin Wayne KLARE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–00–00481–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

March 7, 2002.

Discretionary Review Refused
July 31, 2002.

Shannon T. Nash, Kim H. Tolleson, Spring, for appellants.

William J. Delmore, III, Houston, for appellees.

Panel consists of Chief Justice BRISTER and Justices FOWLER and SEYMORE.

## MAJORITY OPINION

WANDA McKee FOWLER, Justice.

Appellant Marvin Wayne Klare was convicted of driving while intoxicated, sentenced to one-year confinement probated for two years, fined, and placed on community supervision. Appellant brings three issues on appeal: (1) whether the arresting officer had probable cause to stop appellant's vehicle and detain him; (2) whether the arresting officer had reasonable suspicion to stop, detain, and investigate appellant; and (3) whether the arresting officer properly stopped appellant under the community care-taking function. Finding lack of reasonable suspicion to detain appellant, we reverse the judgment of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

At a pretrial suppression hearing, appellant argued that his arrest was without probable cause or reasonable suspicion and asked the trial court to suppress evidence obtained as a result of his allegedly illegal arrest. Complaining that his rights were violated under the Fourth Amendment to the United States Constitution and Article I, section 9 of the Texas Constitution, appellant appeals the trial court's denial of his motion to suppress.

While on routine patrol at 2:30 a.m. on December 11, 1999, Tomball Police Officer, Corporal Gene Whitenack, stopped appellant's vehicle and arrested him. Officer Whitenack first spotted appellant's vehicle as Officer Whitenack was traveling down Highway 249 at approximately 50 miles per hour. Appellant's vehicle was parked off the highway behind a strip shopping center, facing a 24–hour convenience store. Officer Whitenack admitted that when he first spotted appellant's white pick-up truck, he could not determine the make or model of the vehicle or whether it was occupied. But, because he found the parked vehicle suspicious, Officer Whitenack exited the highway and circled back to investigate further. During that time, he lost sight of the vehicle for about fifteen seconds, as his view was obstructed by the shopping center. When Officer Whitenack turned into the back parking lot of the shopping center, he discovered that the vehicle was gone. He then proceeded onto the adjoining road, and within 15 to 20 seconds, came upon a vehicle that he believed to be the one previously parked at the shopping center. It was at this time Officer Whitenack turned on his emergency lights, pulled appellant's vehicle over, and arrested appellant.

At the suppression hearing, Officer Whitenack testified that he had eight years of experience as a peace officer, and in his belief, it was unusual for a vehicle to be parked behind the shopping center at that time of the morning. When questioned by the State, he simply stated that the "time of day" aroused his suspicion about the vehicle, and as such, he wanted to "I.D." the occupant. Officer Whitenack also said there had been "problems with burglary in the past" at that location, but he did not claim that it was a high-crime area. Under cross-examination, Officer Whitenack admitted that appellant committed no traffic violations, and that appellant's driving was not unusual. Officer Whitenack also testified that he had received no recent reports of any crimes committed in the area, at or near the shopping center. Nor could Officer Whitenack answer affirmatively that he had any reason to believe that a crime had been committed or was about to be committed by someone in the parked vehicle. Instead, he claimed he did not see anyone in the vehicle, but because of the time of day and location of the vehicle, "[i]t raised my curiosity as far as suspicion goes." Alternatively, Officer Whitenack claims he was concerned that the vehicle may have experienced a mechanical breakdown, and that the usual procedure under such circumstances is to "check out the vehicle."

In sum, the officer cites the following reasons which, in his belief, permitted him to stop appellant's vehicle: (1) the time of day; (2) the businesses in the shopping center were closed; (3) there had been burglaries at the shopping center in the past, though he did not say how recent or how many; (4) he wanted to identify the truck; and (5) he was concerned that the vehicle may have been broken down and someone inside may have needed assistance, thereby entitling him to make a stop pursuant to the community care-taking exception to lack of probable cause.

## STANDARD OF REVIEW

Although great weight should be given to the inferences drawn by the trial judge and law enforcement officers, determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App.1997). In *Ornelas v. United States*, the U.S. Supreme Court stated, "the legal rules for probable cause and reasonable suspicion acquire content only through application. Independent review is therefore necessary if appellate courts are to maintain control of, and to clarify the legal principles." 517 U.S. 690, 697, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911 (1996). If the trial court does not make explicit findings of historical fact, as here, we review the evidence in a light most favorable to the trial court's ruling, while reviewing de novo the lower court's application of the relevant Fourth Amendment standards. *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex.Crim.App.2000).

## REASONABLE SUSPICION

Both federal and state law permit police officers to stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1, 22–26, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Garza v. State*, 771 S.W.2d 549, 558 (Tex.Crim.App. 1989).[1] Accordingly, the individual officer must have a reasonable suspicion that "some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime." *Terry*, 392

U.S. at 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Davis v. State*, 947 S.W.2d 240, 244 (Tex.Crim.App.1997). An appeals court looks to the totality of the circumstances to determine whether a stop is supported by reasonable suspicion. *U.S. v. Sokolow*, 490 U.S. 1, 9, 109 S.Ct. 1581, 1586, 104 L.Ed.2d 1 (1989); *Woods v. State*, 956 S.W.2d 33, 38 (Tex.Crim.App.1997); *Shaffer v. State*, 562 S.W.2d 853, 855 (Tex.Crim.App.1978). The police must point to particular facts and inferences rationally drawn from those facts that, when viewed under the totality of the circumstances and in light of the officer's experience, create a reasonable suspicion that criminal activity is afoot. *Terry*, 392 U.S. at 27, 88 S.Ct. at 1880, 1883; *United States v. Juvenile T.K.*, 134 F.3d 899, 902 (8th Cir.1998); *Woods*, 956 S.W.2d at 38.

The prohibition of unreasonable searches and seizures extends to the brief investigatory stop of a vehicle, *U.S. v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981), *United States v. Brignoni–Ponce*, 422 U.S. 873, 880–81, 95 S.Ct. 2574, 2579–80, 45 L.Ed.2d 607 (1975), although one's expectation of privacy in an automobile and of freedom in its operation are significantly different from the traditional expectation of privacy in one's residence. *United States v. Martinez–Fuerte*, 428 U.S. 543, 561, 96 S.Ct. 3074, 3084–85, 49 L.Ed.2d 1116 (1976). Still, an officer may not detain a motorist without a showing of reasonable suspicion, a particularized and objective basis for suspecting the particular person of criminal activity. *Cortez*, 449 U.S. at 417, 101 S.Ct. at 694–95. "Some quantum of individualized sus-

---

**1.** In regard to a temporary investigative stop of a vehicle, Article I, Section 9 of the Texas Constitution does not afford a more stringent standard than the U.S. Constitution. *Rhodes v. State*, 945 S.W.2d 115, 117 (Tex.Crim.App. 1997), *cert. denied*, 522 U.S. 894, 118 S.Ct.

236, 139 L.Ed.2d.167 (1997). Therefore, if the stop of the vehicle and the subsequent actions of the officer are not in violation of the federal standard under *Terry*, they do not violate Article I, Section 9 of the Texas Constitution. *Id.*

picion is usually a prerequisite to a constitutional search and seizure." *Martinez–Fuerte,* 428 U.S. at 560–61, 96 S.Ct. at 3084; *Terry,* 392 U.S. at 21 & n. 18, 88 S.Ct. at 1880. The detaining officer must point to something that would lead a reasonable person to believe that the detainee was engaged in a criminal act. *Viveros v. State,* 828 S.W.2d 2, 4 (Tex.Crim.App. 1992). Innocuous conduct alone does not justify an investigatory stop for which reasonable suspicion is required unless there is other information or surrounding circumstances of which the police are aware. *United States v. Sigmond–Ballesteros,* 247 F.3d 943, 949 (9th Cir.2001). The validity of a seizure is a dual inquiry: whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances that justify the interference in the first place. *United States v. Zucco,* 71 F.3d 188, 190 (1995); *Worthey v. State,* 805 S.W.2d 435, 436 (Tex.Crim.App.1991). A warrantless arrest made without reasonable suspicion or probable cause cannot be justified by evidence seized as a result of the arrest. *Colston v. State,* 511 S.W.2d 10, 13 (Tex. Crim.App.1974).

■ Although neither party disputes this, we mention at the outset that the stop began as an investigative detention. *See Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (stating that a traffic stop is a Fourth Amendment seizure analogous to a temporary investigative detention); *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979) (defining a traffic stop as a seizure, implicating the Fourth and Fourteenth Amendments); *Dickey v. State,* 716 S.W.2d 499, 503 n. 4 (Tex.Crim.App.1986) (stopping a vehicle and detaining its occupants constitutes a seizure within the meaning of the Fourth Amendment). A seizure has occurred when a reasonable person would believe he or she was not free to leave. *Garza,* 771 S.W.2d at 558; *Hernandez v. State,* 963 S.W.2d 921 (Tex.App.-San Antonio 1998, pet. ref'd) (activating emergency lights would cause a reasonable person to believe he or she is not free to leave). Reasonable suspicion is required to detain a motorist for an investigative detention. *Cortez,* 449 U.S. at 417–18, 101 S.Ct. at 695; *Davis v. State,* 947 S.W.2d at 242–43. Officer Whitenack stopped appellant as appellant was driving on a highway. Once Officer Whitenack put on his lights indicating his desire for appellant to stop, appellant was not free to leave. *See California v. Hodari D.,* 499 U.S. 621, 627–28, 111 S.Ct. 1547, 1551–52, 113 L.Ed.2d 690 (1991); *Perez v. State,* 818 S.W.2d 512, 515 (Tex. App.-Houston [1st Dist.] 1991, no pet.). Therefore, reasonable suspicion was required.

■ The concept of reasonable suspicion cannot be reduced to "a neat set of legal rules." *Sokolow,* 490 U.S. at 7, 109 S.Ct. at 1585. Verbal formulations used to evaluate "reasonable suspicion" are not self-defining and cannot provide clear answers to all factual circumstances that may arise; therefore, a fact specific, case by case analysis is required. *Cortez,* 449 U.S. at 417, 101 S.Ct. at 694. Thus, to determine whether Officer Whitenack had reasonable suspicion to stop appellant, we must look to the facts known to Officer Whitenack that led him to stop appellant. We address the factors articulated by Officer Whitenack in turn.

### FACTORS TO CONSIDER IN FINDING REASONABLE SUSPICION

#### Time of Day

■ Time of day is a factor that a court may take into consideration when determining whether an officer's suspicion

was reasonable; however, time of day is not suspicious in and of itself. *Brown v. Texas*, 443 U.S. 47, 53, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979) (concluding that nighttime activity per se is not sufficient to create reasonable suspicion of criminal activity); *Cortez*, 449 U.S. at 420–21, 101 S.Ct. 690, 66 L.Ed.2d 621 (pointing out that time of day may be a legitimate, yet marginal consideration, in a reasonable suspicion analysis); *Scott v. State*, 549 S.W.2d 170 (Tex.Crim.App.1976) (finding that time of day 1:30 a.m.-along with other factors-high crime area and reports of hubcap thefts in the past, insufficient to support reasonable suspicion); *Gamble v. State*, 8 S.W.3d 452, 453–54 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (invalidating a search when a detention was based on a history of drug sales in the area, frequent calls for police assistance to the area, and time of day, i.e., 3:00 a.m.); *United States v. Jimenez–Medina*, 173 F.3d 752 (9th Cir.1999) (finding factors of time of day, along with four other factors, insufficient to support inference of reasonable suspicion); *United States v. Guerrero–Barajas*, 240 F.3d 428, 432–33 (5th Cir. 2001); *United States v. Morales*, 191 F.3d 602, 604 (5th Cir.1999); *United States v. Jones*, 149 F.3d 364, 370 (5th Cir.1998) (concluding that coming through a checkpoint at a time when border patrol agents change shifts weighs in favor of reasonable suspicion); *United States v. Rideau*, 969 F.2d 1572, 1575 (5th Cir.1992); *United States v. Briggman*, 931 F.2d 705 (11th Cir.1991) (stating that time of day is a factor in a reasonable suspicion analysis); *Renteria v. State*, 989 S.W.2d 114, 118 (Tex.App.-San Antonio 1999, pet. ref'd); *United States v. Nicholas*, 104 F.3d 368 (10th Cir.1996) (pointing out that time of day has little relevance when defendant's car was parked at an establishment that was open for business twenty-four hours a day); *United States v. Smith*, 799 F.2d 704, 707 (11th Cir.1986) (invalidating stop based on time of day and driving below the posted speed limit); *United States v. Garcia*, 732 F.2d 1221, 1225 (5th Cir.1984) (finding stop did not violate the Fourth Amendment and citing "late hour" as one of eight factors in its conclusion).

## Businesses in the Commercial District were Closed

 Similarly, the fact that a car is parked in close proximity to a business that is closed for the day, is not, in and of itself, suspicious; instead, it is only a factor to consider in deciding whether there is reasonable suspicion. *Briggman*, 931 F.2d at 709 (finding reasonable suspicion when one of three factors was that the defendant was observed in the parking lot of a business that had been closed for hours); *United States v. Raino*, 980 F.2d 1148, 1149–50 (8th Cir.1992) (stating that a parked vehicle in a closed parking lot is a factor in a finding of reasonable suspicion); *Nicholas*, 104 F.3d 368 (presence of a vehicle in a closed or abandoned building late at night is a factor); *Shaffer*, 562 S.W.2d 853 (reversing a handgun conviction of a taxi driver who was driving about 5 to 10 miles per hour through a commercial district at 3:00 a.m. when all the businesses were closed); *see also* 4 LaFave, Search and Seizure § 9.4(d), at 161–65 (4th ed.1996) (discussing reasonable suspicion as it relates to certain premises and time of day).

## Establishments Burglarized in the Past

 The fact that a given locale is well-known for criminal activity will not by itself justify a *Terry* stop, but it is among the various factors that officers may take into account. *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000); *Munoz v. State*, 709 S.W.2d 34 (Tex.App.-Corpus Christi 1986,

no pet.) (finding report that house was previously broken into insufficient to support reasonable suspicion). Thus, reasonable suspicion cannot be based solely on Officer Whitenack's knowledge that burglaries have previously occurred at that locale. *See Brown,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (reversing a conviction when officers stopped and searched the defendants only after viewing them in an area notorious for drug trafficking, and the officers were unable to articulate any basis for their conclusion that the defendants "looked suspicious").

Of the reasons cited by Officer Whitenack, he said they "raised [his] curiosity as far as suspicion goes." This statement exemplifies the "inarticulate hunch" denounced by *Terry,* and it says nothing about appellant or his conduct. A lawful stop must be based on more than a vehicle's suspicious location or time of day. Although relevant to our analysis, both time of day and the level of criminal activity in the area are facts which focus on the suspect's surroundings rather than on the suspect himself. Consequently, courts generally require an additional fact or facts particular to the suspect's behavior to justify a suspicion of criminal activity. *Cortez,* 449 U.S. at 418, 101 S.Ct. at 695. The following additional factors have been held to be sufficient: traffic violations, *Walter v. State,* 28 S.W.3d 538 (Tex.Crim. App.2000); outstanding traffic warrants, *Myles v. State,* 946 S.W.2d 630 (Tex.App.-Houston [14th Dist.] 1997, no pet.); failure to signal, *Howard v. State,* 599 S.W.2d 597, 599–600 (Tex.Crim.App.1979); driving on the wrong side of the road, *Hamilton v. State,* 831 S.W.2d 326 (Tex.Crim.App. 1992); running a stop sign, *Garcia v. State,* 827 S.W.2d 937 (Tex.Crim.App. 1992); failure to wear a seatbelt, *Ortega v. State,* 861 S.W.2d 91 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd); driving through a gas station to avoid a red light,

*Cabrales v. State,* 932 S.W.2d 653 (Tex. App.-Houston [14th Dist.] 1996, no pet.); expired inspection sticker and no seatbelt, *Madison v. State,* 922 S.W.2d 610, 612 (Tex.App.-Texarkana, 1996, pet.ref'd); reckless driving, *Blount v. State,* 965 S.W.2d 53 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd); weaving, *Townsend v. State,* 813 S.W.2d 181, 185 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd); crossing the center line, *Gajewski v. State,* 944 S.W.2d 450, 453 (Tex.App.-Houston [14th Dist.] 1997, no pet.); burned out taillight, *Simpson v. State,* 29 S.W.3d 324 (Tex.App.-Houston [14th Dist.] 2000, no pet.); occupants of vehicle that matched description of police radio broadcast, *Walker v. State,* 555 S.W.2d 454 (Tex. Crim.App.1977); and speeding, *Nite v. State,* 882 S.W.2d 587 (Tex.App.-Houston [1st Dist.] 1994, no pet.).

Without observing any of these additional factors, Officer Whitenack stopped appellant's car.

### REASONABLE SUSPICION IS A FACTUALLY BASED INQUIRY

█ Although there are no independent indicia of reasonable suspicion in the record, we have examined a wide range of cases to determine whether, under the totality of the circumstances, reasonable suspicion may be supported in this case. The great weight of authority leads us to conclude that the reasons set forth by Officer Whitenack in the suppression hearing are insufficient to support reasonable suspicion. The following cases bolster our determination.

In *White v. State,* the Court of Criminal Appeals held a stop unlawful when an automobile was observed driving around aimlessly in a shopping mall parking lot. 574 S.W.2d 546, 547 (Tex.Crim.App.1978). One officer testified that he stopped the

car because there had been a rash of recent purse snatchings at the mall. The Court concluded that because no illegal behavior was observed, and the basis for the officers' suspicions was a "mere hunch," the automobile stop was unauthorized. *Id.* at 548.

In *Benton v. State,* the Court of Criminal Appeals invalidated a stop under facts nearly identical to those here. The officer in *Benton* cited recent burglaries in the area, the time of day, and the lack of traffic on the street as justification for pulling over the defendant's car. 576 S.W.2d 374 (Tex.Crim.App.1978).

The facts of *Tunnell v. State* are also similar to the case at hand. 554 S.W.2d 697 (Tex.Crim.App.1977). There, the officer saw the defendant and two other men in a car with its lights off, in a well-lit hospital parking lot. *Id.* at 697–98. Deciding this "activity" was suspicious, the officer proceeded to investigate further. *Id.* at 698. Before the officer could approach the car, it began to drive away, so the officer stopped the car. *Id.* As in the instant case, the officer in *Tunnell* observed no traffic violations and stated that the defendant engaged in no criminal activity and took no evasive action. *Id.* The Court of Criminal Appeals held that the stop was constitutionally prohibited and required reversal. *Id.* at 699.

The arresting officer in *Jones v. State* stopped appellant's car solely because appellant drove his car from behind a clump of trees in a dark area of a park at 10:25 at night. The officer was curious as to why appellant would be parked in that location at that time of night. 926 S.W.2d 386 (Tex.App.-Fort Worth 1996, pet. ref'd). We believe the facts of the instant case are not dissimilar. Officer Whitenack was merely suspicious as to why appellant was parked where he was at that time of night.

In the following cases, Texas courts have found valid justification for making a stop. However, as shown below, there were independent indicia of facts giving rise to reasonable suspicion.

In *Amorella v. State,* the court held that an investigatory stop was justified when a police officer observed a vehicle with its lights on and motor running in a department store parking lot at 1:30 a.m. 554 S.W.2d 700, 701 (Tex.Crim.App.1977). The area was known to be a "high crime area." *Id.* The vehicle contained two individuals and a third was standing outside the vehicle next to the open trunk. *Id.* Although the parking lot was empty, the vehicle was parked immediately beside the store. *Id.* When the man outside the vehicle noticed the officer, he got into the vehicle and began to drive off. *Id.* The officer then stopped the vehicle. The Court held that the investigative stop was justified, as the facts gave rise to a reasonable suspicion of criminal activity. *Id.* at 702. In the instant case, there are fewer facts on which to base reasonable suspicion. Here, Officer Whitenack saw no occupants nor anyone standing near an open trunk of a car, and when he attempted to lawfully approach the car, it was gone. Then, upon a later encounter with a vehicle, which may or may not have been appellant's, Officer Whitenack stopped the vehicle without seeing any additional activity to arouse his suspicions that criminal activity had occurred or was occurring. Thus, the activity observed in *Amorella* gave rise to reasonable suspicion, when here, there is no activity at all on which to draw an inference of criminal activity justifying the stop.

Similarly, the court upheld a stop when officers observed an automobile parked in front of a motel at 3:00 p.m. with a piece of furniture protruding from the trunk. *Hernandez v. State,* 523 S.W.2d 410, 411 (Tex.

Crim.App.1975). The occupant was a known burglar and narcotics addict, and under the totality of the circumstances, the Court concluded that the stop was authorized. *Id.* at 412. Here, Officer Whitenack did not have any prior knowledge of appellant or witness any suspicious or unlawful activity. Instead, Officer Whitenack simply stopped a vehicle proceeding lawfully down the road.

### CONCLUSION

We find that the trial court's ruling is not supported by the record. *See Romero,* 800 S.W.2d at 543. The record shows that the facts available to Officer Whitenack at the moment of appellant's seizure would not warrant a man of reasonable caution to believe that the action taken was appropriate. *See Terry,* 392 U.S. at 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (prescribing an objective standard when finding reasonable suspicion or probable cause); *Davis,* 947 S.W.2d at 243 (same). Moreover, Officer Whitenack was unable to point to any objective manifestation that appellant was, or was about to be, engaged in criminal activity. *See Cortez,* 449 U.S. at 417, 101 S.Ct. at 694. In reviewing the facts and the testimony of Officer Whitenack, there is simply no indication or reasonable inference of criminal conduct. *See Garza,* 771 S.W.2d at 558. Thus, the facts known to Officer Whitenack fall short of supporting an objectively reasonable suspicion of criminal activity. At most, the facts give rise to the kind of inarticulate hunch of illegal activity prohibited by *Terry.*

Because we hold that the trial court erred in denying appellant's motion to suppress for lack of reasonable suspicion, we do not address appellant's claim of lack of probable cause or his third issue on appeal. The judgment of the trial court is reversed

and remanded for proceedings consistent with this opinion.

BRISTER, C.J. dissenting.

SCOTT BRISTER, Chief Justice, dissenting.

In hindsight, it appears appellant was not engaged in criminal activity while parked behind a closed strip shopping center at 2:30 a.m. on a cold December night in 1999. His criminal activity (driving while intoxicated-for the second time) occurred when he drove off just after a police officer on patrol turned off the highway to investigate. It is possible appellant's departure at the same time the police arrived was coincidental, but of course the officer had no way of knowing that at the time. It is possible that "reasonable suspicion" may arise when, among other circumstances, an individual flees at the approach of the police. *See California v. Hodari D.,* 499 U.S. 621, 623 n. 1, 111 S.Ct. 1547, 1549 n. 1, 113 L.Ed.2d 690 (1991). Viewing the evidence in the light most favorable to the trial court's ruling, and assuming the trial court made implicit findings of fact that would buttress its conclusion, *see Carmouche v. State,* 10 S.W.3d 323, 328 (Tex.Crim.App.2000), I believe the officer had reasonable suspicion to stop appellant. Thus, I respectfully dissent.

I concede that in most Texas cases involving similar fact situations (including several cited in the majority opinion), appellate courts have found the traffic stops improper. But there are at least two reasons why I think these cases may no longer apply.

First, a traffic stop passes Fourth Amendment scrutiny if an officer can point to specific and articulable facts supporting a reasonable suspicion that criminal activity may be afoot. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889

(1968). From 1976 until 1997, however, any observations that were "as consistent with innocent activity as with criminal activity" could not establish reasonable suspicion. *See Armstrong v. State,* 550 S.W.2d 25, 31 (Tex.Crim.App.1976). Both the United States Supreme Court and the Texas Court of Criminal Appeals subsequently rejected this "as consistent with innocent activity" test. *See United States v. Sokolow,* 490 U.S. 1, 9, 109 S.Ct. 1581, 1586, 104 L.Ed.2d 1 (1989); *Woods v. State,* 956 S.W.2d 33, 36 (Tex.Crim.App. 1997). The public rightfully expects officers to investigate circumstances consistent with criminal activity, even if such circumstances may also have an innocent explanation. *Woods,* 956 S.W.2d at 37. Because most of the cases cited in the majority opinion were decided during this twenty-year period between 1976 and 1997, we do not know how many might be decided differently under current standards.

Second, the "totality of the circumstances" test does not allow us to eliminate particular factors on a piecemeal basis, as the majority opinion partly does. The United States Supreme Court recently rejected this "divide-and-conquer analysis" in its unanimous opinion in *United States v. Arvizu,* 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). Instead, we must view all of the factors together, including the officer's specialized training and familiarity with customs in the area. *Id.* at 754 (holding Ninth Circuit erred by applying standards of a San Francisco highway to a stop occurring on a primitive road in southeastern Arizona).

In this case, Officer Whitenack had been with the Tomball police department for seven years, and was necessarily familiar with the scene, as it abutted the only major thoroughfare in this small community. He testified he found it suspicious that a pick-up truck would be parked (1) across rather than within painted parking spaces, (2) in a small lot where only employees parked, (3) behind a closed shopping center, (4) at which there had been previous burglaries, (5) at 2:30 a.m. on a cold morning. He also found it suspicious that the truck left when he pulled up to investigate. Viewing all the evidence, I would find that these facts gave rise to a reasonable suspicion, and thus would affirm the trial court's judgment.