NO. 07-02-0111-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



MARCH 28, 2003



______________________________




FRANK JAMES MARTINEZ, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2001-436826; HONORABLE BRADLEY S. UNDERWOOD, JUDGE



_______________________________



Before REAVIS and CAMPBELL, JJ., and BOYD, S.J. (1)

MEMORANDUM OPINION


 Appellant Frank James Martinez was convicted by a Lubbock County jury of
aggravated assault with a deadly weapon and his punishment was assessed at 12 years
confinement in the Institutional Division of the Department of Criminal Justice. In one
issue, he complains that the trial judge erred in two respects during the prosecutor's
closing argument in the punishment phase of his trial. First, he argues the trial judge
prevented his counsel from requesting appropriate relief after sustaining his objection to
the prosecution's closing argument, and second, the trial judge failed to properly prevent
the prosecution from continuing its improper argument. Disagreeing that error is shown,
we affirm the judgment of the trial court.

 Initially, we note that appellant's only complaint concerns errors alleged to have
occurred during the punishment phase of the trial. That being true, even if reversible error
was shown, appellant would only be entitled to another punishment hearing and not a
retrial on guilt or innocence. Tex. Code Crim. Proc. Ann. art. 44.29(b) (Vernon Supp.
2003); Carson v. State, 6 S.W.3d 536, 538 (Tex. Crim. App. 1999).

 This prosecution arose from an incident in which the victim was stabbed in the neck.
Because it is not material to this appeal, it is not necessary to recite the full factual
background of the prosecution. There are three particular portions of the prosecutor's
argument about which appellant complains. First, the prosecutor argued: "I mean, what
would you think? You just got stabbed. You think that's all that's going to happen? How
do you know they're not coming back around the corner?" Appellant argues that this
argument impermissibly encouraged the jurors to put themselves in the place of the victim. 
No trial objection was made to this portion of the argument. Second, the prosecutor
argued: "He (appellant) is in the alley trying to kill somebody by stabbing them in the neck." 
Appellant asserts this argument is reversible because in effect, it improperly implies the
State has verified the truthfulness of the testimony that it has presented. Again, no trial
objection on this basis was made. 

 Appellant's third complaint concerns the prosecutor's argument that: "Two reasons
why probation is not an appropriate punishment in this kind of case, first reason is in
Lubbock, Texas, you don't go around with steak knives and try to kill people and go down
the elevator with the same jury that set your punishment." Counsel objected to this
argument and asked the trial court ". . . May we approach the bench?" The court replied,
"No, the objection is sustained." The prosecutor then continued with the statement: "Well,
you don't get probation, ladies and gentlemen, for trying to kill someone in Lubbock,
Texas," without further objection or request by appellant. Appellant asserts that this was
an improper call upon the jury to determine his punishment in accordance with community
standards rather than upon the evidence it heard. Shortly thereafter, in the continuation
of his argument, the prosecutor stated: "Don't let the defense lawyer, Mr. Hocker, try to
shame you into feeling bad about sending someone to prison for trying to kill another
person. You can be proud of the fact that the sentence in Texas, in Lubbock, Texas, can
be that you can go to prison for 20 years for trying to kill another guy." Appellant's counsel
then objected: "Your Honor, I'm going to object to this line of argument, intent to kill." The
objection was overruled. Appellant argues that this sequence of arguments mandates
reversal because they amount to an attempt by the prosecution to strike at appellant over
the shoulder of his counsel and to inflame the jury's passions so as to sentence appellant
for the more heinous crime of attempted murder rather than the aggravated assault with
which he was charged. 

 It is well established that in order to preserve jury argument error, the appellant must
have objected and pursued that objection to an adverse ruling. Cockerell v. State, 933
S.W.2d 73, (Tex. Crim.App. 1996), cert. denied, 520 U.S. 1173, 117 S.Ct. 1442, 137
L.Ed.2d 548 (1997). In explication of the rule, the Cockerell court commented that "a
defendant's 'right' not to be subjected to incurable erroneous jury arguments is one of
those rights that is forfeited by a failure to insist upon it," the court held that before a
defendant will be permitted to complain on appeal about an erroneous jury argument or
that an instruction to disregard could not have cured such an argument, "he will have to
show he objected and pursued his objection to an adverse ruling." Id. at 89. See also Tex.
R. App. P. 33.1 (a)(1)(A); Mathis v. State, 67 S.W.3d 918, 926-27 (Tex. Crim. App. 2002);
Janecka v. State, 937 S.W.2d 456, 474 (Tex. Crim. App. 1996), cert. denied, 522 U.S. 825,
118 S.Ct. 86, 139 L.Ed.2d 43 (1997); Lange v. State, 57 S.W.3d 458, 467 (Tex.
App.-Amarillo 2001, no pet.).

 With regard to the portions of the prosecutor's argument to which appellant failed
to object, that failure failed to preserve any question for appellate review. In respect to the
portion of the argument to which appellant's objection was sustained, his failure to pursue
that question to an adverse ruling again fails to preserve the question as to that portion for
our appellate review. We have not overlooked appellant's contention that the trial judge
prevented him from pursuing the matter. However, the record does not support that
argument. Nothing the judge did or said prevented appellant from further pursuing the
matter from where he stood. It was not necessary to approach the bench to make further
requests for an instruction to disregard or to move for a mistrial.

 In summary, appellant's issue does not present reversible error. Accordingly, it is
overruled and the judgment of the trial court is affirmed.


 John T. Boyd

 Senior Justice


Do not publish. 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. 
Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003). 




asking: “Do you mind if I look?” To it, appellant answered “yes,” according to the officer. 
Upon so replying, appellant was ordered to exit the car. 
          As he left the vehicle, appellant appeared to place a hand in his pocket. This
resulted in Williams grabbing appellant’s hand and asking permission to search the content
of his pocket. Therein was found the marijuana for which appellant was prosecuted. 
          Law
          The applicable standard of review is discussed in Ford v. State, 158 S.W.3d 488
(Tex. Crim. App. 2005). It requires us to give great deference to the trial court’s
interpretation of historical fact and assessment of a witness’ credibility. Id. at 493.
However, we need not give such deference to its application of the law to the facts,
especially when those facts are undisputed. Neal v. State, 256 S.W.3d 264, 281 (Tex.
Crim. App. 2008). In the latter situation, we consider the matter de novo. Id. 
          Next, no one contests the validity of the initial detention. Simply put, Williams had
the authority to stop appellant when he witnessed the traffic violation. Whren v. United
States, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996) . No one denies
that the directive to exit the car was tantamount to a continuation of the detention. Nor
does anyone dispute that the officer’s directive to exit arose from what he believed to be
appellant’s consent to search. Similarly absent is any dispute regarding whether
justification for, or the purpose of, the initial stop had ended by the time the officer sought
consent to search the vehicle. See Kothe v. State,152 S.W.3d 54, 63-64 (Tex. Crim. App.
2004) (stating that in a routine traffic stop, police officers may request certain information
from a driver, such as a driver's license and car registration, and may conduct a computer
check on that information, but after this computer check is completed, and the officer knows
that this driver has a currently valid license, no outstanding warrants, and the car is not
stolen, the traffic-stop investigation is fully resolved and the detention must end). Rather,
the controversy before us involves whether appellant consented to the search, and that is
the question we address here. 
          When relying upon consent to justify the lawfulness of a search, the State must
prove by clear and convincing evidence that the consent was freely and voluntarily given. 
Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968); 
Johnson v. State, 226 S.W.3d 439, 443 (Tex. Crim. App. 2007); Brown v. State, 212
S.W.3d 851, 869 (Tex. App.–Houston [1st Dist.] 2006, pet. ref’d). In meeting the burden,
it must also show that the consent was positive and unequivocal. Meeks v. State, 692
S.W.2d 504, 509 (Tex. Crim. App. 1985); Brown v. State, 212 S.W.3d at 869. Incidentally,
consent is not of that ilk if it amounts to no more than acquiescence to a claim of lawful
authority. Brown v. State, 212 S.W.3d at 869. Finally, the existence of legitimate consent
is a question of fact to be determined from the totality of circumstances appearing of
record, and, unless the trial court abuses its discretion, its decision must be affirmed. 
Johnson v. State, 226 S.W.3d at 443 (holding that the applicable standard of review is one
of abused discretion). 
          Application of Law
          As previously described, the video of the stop revealed that Williams asked for
consent about six times. Appellant’s first five replies to those solicitations were evasive and
so much so that they resulted in the officer informing him that the inquiry was a “yes or no
question.” The officer’s desire to hear a “yes” or “no” answer continued until appellant said
“yes” or “I guess” to the last solicitation. Because that utterance allegedly evinced to
Williams “clear and unequivocal” consent, he ordered appellant to exit the vehicle. The
problem comes, however, in the nature of the question to which appellant said “yes” or “I
guess.” 
          The officer had not asked “may I search” but rather “would you mind if I look?” 
Answering “yes” to the latter meant that appellant did mind. Answering “I guess” also had
and has like connotation; that is, saying “I guess” in response to being asked if one minds
whether something happens can well indicate that he does. To this we add appellant’s
prior evasiveness in response to the officer’s persistence in asking for consent. When
combined, the circumstances paint not a picture of clarity or unequivocation but rather one
of vacillation and hesitance. More importantly, to somehow conclude from the entirety of
the scenario that saying “yes” or “I guess” meant that appellant finally acquiesced to the
search invites speculation into various matters. Those matters consist of whether appellant
failed to listen to the specific question asked by Williams, whether he ignored the last
question and opted to answer those previously propounded, or whether he reinterpreted
the question from one asking “would you mind” to one asking “may I search.” Yet, authority
denies both this court and the initial factfinder from engaging in speculation given the
absence of supporting evidence.  
          Simply put, the situation before us is not one in which the historical facts are in
dispute, for they are not. They were put to rest by both the video and Williams’
confirmation of what appeared on the video. What was said and done was said and done,
neither can be questioned nor changed. Thus, we merely are left with applying the
undisputed facts to the law regarding consent, and that is a task undertaken de novo. And,
upon undertaking that task, we hold, as a matter of law, the State failed to clearly and
convincingly prove that appellant granted the officer positive, unequivocal, and voluntary
consent to search his car.


 
          Despite our conclusion that the issue before us involved consent, there is some
allusion in the State’s brief regarding whether the officer had reasonable suspicion to
believe appellant engaged in some drug crime. The State’s appellate counsel tended to
downplay that proposition during oral argument but to the extent the matter was not
conceded, we will address it briefly. First, we know of no authority holding that simply
seeing someone leave a “narcotics house” at 11 p.m. and enter a car parked down the
block gives rise to reasonable suspicion to believe that criminal activity is afoot. Nor did
we find any. Indeed, it appears that the opposite is true for being in an area known for its
high crime at night does not alone permit an officer to detain the traveler. See e.g. Klare
v. State, 76 S.W.3d 68, 73-74 (Tex. App.–Houston [14th Dist.] 2002, pet. ref’d). 
          Furthermore, Williams having characterized appellant’s conduct as akin to “almost
like they were trying to sneak down the block” is of no moment. This is so since
establishing reasonable suspicion required the presentation of articulable “facts.” Scott v.
State, 549 S.W.2d 170, 172 (Tex. Crim. App. 1978). Labeling the conduct of appellant and
his colleague as sneaky or sneaking is an opinion founded on fact, but in so opining the
officer failed to disclose the facts which permitted him to reasonably develop the opinion. 
So, the officer’s opinion had no probative value in the overall equation. As repeatedly
uttered by Sargent Joe Friday, “just the facts please . . . just the facts.” 
          That the officer also characterized appellant’s parking down the block as suspicious
is also of little value. This is so because he thought that one engaging in innocent conduct
would have parked in the empty driveway given the inclement weather. Yet, defense
counsel had him admit that he did not know when appellant arrived at the house, did not
see him enter it, did not know how long he remained in the house, and did not know
whether the driveway was empty when appellant arrived. Indeed, the officer also
concluded that he was merely “speculating.”
          As for the allegation that the location from which appellant exited was a “narcotics
house,” Williams based that upon 1) a “sheet” that the narcotic’s department “put’s [sic] out
every six months, sometimes longer” and 2) his having “worked the house before” and
“worked with officers at that house . . . [who] made narcotics arrests . . . from that house.” 
But, the record contains no evidence illustrating when the house was “worked” or when the
arrests were made. Both events could have happened days, weeks, months, or years
earlier. Nor does the record disclose either when the narcotics department issued the
“sheet” used by Williams or when he actually acquired it. Thus, the information in it could
well have been stale especially since it was disbursed every six months or “sometimes
longer.” We see no reason why the timeliness of the data on which the police rely should
be of less importance in the reasonable suspicion equation than it is when determining the
existence of probable cause for purposes of securing a search warrant. See e.g. Blake v.
State, 125 S.W.3d 717, 725 (Tex. App.–Houston [1st Dist.] 2003, no pet.) (noting the
timeliness of the information as a factor to consider when issuing a warrant). Time has the
effect of making the information stale in both situations. So, without our knowing the age
of the “facts” underlying the observation that the abode was a “narcotics house,” the label
is of little help. 
          Finally, we address the observation that further detention was also permissible
because appellant and his passenger appeared nervous. Again, Williams so testified. He
also disclosed the facts upon which he derived that opinion. They consisted of appellant
moving around while his passenger remained still. Though nervousness can be a relevant
indicia, Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000) 
 (so holding), that is not necessarily true here. This is so because of the “Catch 22" nature
of the conduct being observed. Irrespective of whether those in the car sat still or moved
around, either mode of conduct depicted nervousness according to the officer. As Mrs.
Quinn once said years ago, “you can’t have it both ways.” While we do not want to nullify
the probative value an officer may place on the indicia of nervousness, it is rather common,
and natural, for most everyone to exhibit it when stopped by police officers. This may be
due to some respect accorded them or the realization that they have power and authority
beyond that available to an ordinary citizen, but whatever the reason, detention at the
hands of law enforcement personnel often instills a bit of dread even in the hearts of the
innocent. This, coupled with the possibility that most any conduct now can be deemed
nervous, tends to discredit the value of the factor. And, as the indicia appeared here, we
hesitate to engage in the speculation needed to view contrasting or opposite conduct as
indicative of the same thing without any explanation as to why that is. 
          In sum, the record before us does not permit one to objectively conclude that
appellant’s leaving the “narcotics house” and appearing nervous provided Officer Williams
with reasonable suspicion to detain appellant. So, that cannot be a basis for justifying
detention once the purpose for the original stop (i.e. investigating the traffic violation)
ended. 
          Dissent
          Concerning the dissent of Justice Campbell, we respectfully say the following. First,
it is clear that an officer may ask one for permission to search a vehicle after the purpose
of the initial stop ends. Strauss v. State, 121 S.W.3d 486, 491 (Tex. App.–Amarillo 2003,
pet. ref'd). Yet, we have not found authority permitting law enforcement personnel to hold
the detainee until the latter gives consent to search. Again, the justification for continuing
the detention is gone and any further delay must necessarily be consensual. A police
officer directing the person to answer his question is hardly a consensual exchange. 
          Second, while an officer may be able to ask a detainee to step out of the vehicle, id.,
the dissent cites no authority permitting such request once the reason for the stop has
ended, which includes the two cases cited by the dissent. That may be because our Court
of Criminal Appeals has held that once that point has been reached, the suspect must be
released. Kothe v. State, 152 S.W.3d at 63-64. Asking someone who has failed to grant
consent to search to exit the car or repeatedly soliciting consent is nothing more than doing
that prohibited in Kothe. Once the basis for a stop no longer exists and the detainee has
not consented to a search, he must be released unless there exists other circumstances
evincing probable cause or reasonable suspicion to continue the detention. 
          Nor do we find succor in the dissent’s suggestion that discovery of the contraband
was lawful merely because appellant consented to the search of his pocket. By that time,
the initial justification for the stop had ceased. By that time, appellant had already been
subjected to repeated requests for leave to search by one officer while another armed
officer stood nearby. By that time, appellant had illustrated his reluctance if not refusal to
permit a consensual search. By that time, he had been ordered to exit the car by an officer
who lacked unequivocal permission to search. By that time, one could reasonably interpret
the officers’ conduct as indicative of their intent to continue the detention until appellant
answered in an acceptable way. But, by that time, only seconds had passed between the
pressure being applied by the officer, the latter’s unfounded order to get out of the car, and
appellant’s “consent” to search the pocket. These circumstances negate the existence of
opportunity for reflective thinking necessary for there to be any attenuation between the
officer’s improper conduct and his receipt of consent to search the pocket. And, without
satisfying the prerequisite of attenuation, appellant’s consent is not voluntary. Stone v.
State, 279 S.W.3d 688, 693 (Tex. App.–Amarillo 2006, pet. ref’d) (holding that consent may
be valid after an unlawful stop if there is sufficient attenuation between the stop and
consent). This latter observation also negates the dissent’s suggestion that we found the
search of appellant’s pocket to be consensual.
          Accordingly, the judgment is reversed, and the cause is remanded to the trial court.
 
                                                                           Brian Quinn
                                                                          Chief Justice


Campbell, J., dissents.

Publish.