# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00266-CR

**David Allen Cronin, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
NO. CR2003-373, HONORABLE JACK H. ROBISON, JUDGE PRESIDING**

---

## O P I N I O N

David Cronin appeals a judgment against him, resulting from a guilty plea, for felony possession of a controlled substance with intent to deliver in an amount of four grams or more but less than two hundred grams. *See* Tex. Health & Safety Code Ann. § 481.112 (West 2003). In his sole issue, Cronin challenges the district court's denial of his motion to suppress, arguing that the arresting officer lacked "reasonable suspicion" to stop him. *See* U.S. Const., amend. IV; Tex. Const. art. I, § 9; *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968); *United States v. Cortez*, 449 U.S. 411, 417 (1981); *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); *Schwartz v. State*, 635 S.W.2d

545, 547 (Tex. Crim. App. 1982). We reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

**BACKGROUND**

On June 25, 2003, at about 1:30 a.m., Officer Gayleen Anderson of the New Braunfels Police Department was patrolling west on FM 306. On her right was a restaurant, Doug's Barbeque. The restaurant has a parking lot in front of it, picnic tables on the right side as one faces it, and a dumpster on the left, all on pavement. Behind the restaurant is an open field. Through the field, in a semi-circle around the back of the restaurant, runs a gravel driveway, and there is a storage shed between the gravel driveway and the restaurant. Officer Anderson testified that she was familiar with the layout of the property and had patrolled the area previously, and she provided a depiction of the property layout that was admitted into evidence at trial.

As she approached the intersection with Hunter Road, Officer Anderson saw a white and red Ford truck with a camper shell slowly driving out of the parking lot from the direction of the rear of the building of restaurant, which had been closed for several hours. There were no other vehicles in the parking lot. The truck appeared to come from behind the building, then turned eastbound on FM 306.

Officer Anderson had never seen vehicles in the parking lot after the restaurant closed. She had responded to alarms at a nearby business about five weeks earlier.[1] She was not

_____

[1] Officer Anderson testified that on May 19,

within thirty minutes of each other, we had alarms there [at a business across the street] in which the front window, the Jack's business, somebody had broken the

2

aware of any other reports of criminal activity in that area in the meantime. She decided to "follow the vehicle and stop it because it was just very suspicious why he was there." She explained:

> [j]ust the time, the place, it was . . . about 1:30 in the morning. It was dark. The business had been closed for some time. What were they doing? Jacks had windows broken twice. I made the reports. And I wanted to find out what exactly the subject—what the vehicle was doing there, see what their reason for it [was].

She further testified concerning her purpose for the stop: "Mainly I just wanted to find out his purpose for being in the parking lot, identify who he was, and if everything checked out, he would be cut loose."

After Officer Anderson decided to stop the truck, she made a u-turn at the Hunter Road intersection, caught up to the truck, and pulled it over as it approached the frontage road for Interstate 35. She had not observed any traffic violations at that point. After stopping the truck, she approached the truck and asked the driver, Cronin, for his license and proof of insurance. Cronin told her that his license was expired and that he did not have insurance. She then noticed that his registration sticker was partially torn. She confirmed that his license had expired and then placed him under arrest. Officer Bill Spence conducted an inventory search of the truck and discovered methamphetamine and marijuana.

---

window causing the alarm to go off. There was no entry made but about thirty minutes later the same thing. The alarms went off. Went back over there. Somebody had thrown another rock or something into the same window but still there was no entry.

She also stated that a Pit Stop Texaco had been broken into in 1990, thirteen years before the events at issue in this appeal.

Cronin was indicted for possession of a controlled substance with intent to distribute in an amount of four grams or more but less than two hundred grams. *See* Health & Safety Code Ann. § 481.112. Cronin filed a motion to suppress the evidence seized from his truck. During the suppression hearing, Cronin orally amended his motion to challenge only the articulable reasonable suspicion for his detention. At the hearing, Anderson, Spence, Cronin and Cronin's girlfriend, Lesli Byers, testified. Cronin denied driving in the parking lot.

The district court denied the motion to suppress and entered findings of fact, agreeing with Officer Anderson's version of the events. It also entered a conclusion of law that "reasonable suspicion existed to detain [Cronin] when [he] drove his vehicle slowly from behind a business that had been closed for a period of time in an area in which there had been recent criminal activity." Cronin then pleaded guilty pursuant to a plea agreement, and the district court assessed his punishment at five years' confinement in the penitentiary, probated for five years, and a fine of $2,500.

## DISCUSSION

In his only issue, Cronin challenges the district court's conclusion that Anderson had reasonable suspicion to detain him. *See Terry*, 392 U.S. at 21-22; *Garcia*, 43 S.W.3d at 530. In particular, Cronin argues the district court erred in finding that Officer Anderson's testimony provided specific, articulable facts which gave rise to a reasonable suspicion that he was engaged in criminal activity. *See Terry*, 392 U.S. at 21-2; *Viveros v. State*, 828 S.W.2d 2, 4 (Tex. Crim. App. 1992).

4

The appropriate standard for reviewing a trial court's ruling on a motion to suppress is a bifurcated standard of review, giving almost total deference to a trial court's determination of historical facts and reviewing *de novo* the court's application of the law. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). The district court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and it may choose to believe or disbelieve any or all of a witness's testimony. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003); *Wood v. State*, 18 S.W.3d 642, 646 (Tex. Crim. App. 2000); *Alvarado v. State*, 853 S.W.2d 17, 23 (Tex. Crim. App. 1993); *Allridge v. State*, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991).

We must sustain the district court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *State v. Gray*, 158 S.W.3d 465, 467 (Tex. Crim. App. 2005) (quoting *State v. Ross*, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000)); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). In this case, the district court entered findings of fact and conclusions of law. We give almost total deference to the district court in reviewing findings of fact because the district court is in a better position to evaluate the credibility and reliability of witnesses. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). However, we review *de novo* the district court's application of law to those facts when the conclusion, such as the existence of reasonable suspicion, does not turn on witness credibility. *Ornelas v. United States*, 517 U.S. 690, 697-98 (1996); *Guzman*, 955 S.W.2d at 87.

A warrantless automobile stop is a Fourth Amendment seizure analogous to a temporary detention, and it must be justified by reasonable suspicion. *Berkemer v. McCarty*, 468

5

U.S. 420, 436-37 (1984); *Hernandez v. State*, 983 S.W.2d 867, 869 (Tex. App.—Austin 1998, pet. ref'd). The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances at its inception and will be justified when the detaining officer has specific articulable facts, which, taken together with rational inferences from those facts, lead her to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002); *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); *Hernandez*, 983 S.W.2d at 869. These facts must amount to more than a mere hunch or suspicion. *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005); *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997); *Williams v. State*, 621 S.W.2d 609, 612 (Tex. Crim. App. 1981). This standard is an objective one—there need only be an objective basis for the stop. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). The subjective intent of the officer conducting the stop is irrelevant. *Id*. The burden is on the State to elicit testimony of sufficient facts to create a reasonable suspicion. *Id*.; *see also Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (when defendant shows search or seizure occurred without warrant, burden on State to show search or seizure was reasonable). We look only at those facts known to the officer at the inception of the stop—a stop or search unlawful at its inception may not be validated by what it turns up. *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

Mere presence in a high-crime area is not enough to justify a stop. In *Gurrola v. State*, for example, police received a report of a fight in the parking lot of an apartment complex in a high-crime area. 877 S.W.2d 300, 301 (Tex. Crim. App. 1994). When the investigating officer arrived, he observed four individuals engaged in what appeared to be an argument. *Id*. The officer

6

ordered them to his patrol car where he performed a pat-down search, finding a gun and drugs. *Id*. The court of criminal appeals found the detention unjustified because a defendant's mere presence in a high-crime area may not serve as the basis for an investigative stop. *Id*. at 303.

Likewise, an officer's mere subjective opinion does not rise to the level of articulable facts. *See Ford*, 158 S.W.3d at 493. For example, in *Viveros*, police officers stopped a car for "suspicious behavior" because it slowed rapidly and continued at a rate of speed less than the posted speed limit on a public road after being passed by the officers's patrol car. *Viveros*, 828 S.W.2d at 4. The arresting officer testified that, although the suspicious behavior did not amount to reasonable suspicion of a criminal violation, he stopped the car because he "just wanted to check him out and make sure everything was okay." *Id*. at 5. The court of criminal appeals found the stop was not supported by sufficient articulable facts giving rise to a reasonable belief that the defendant was engaged in criminal activity. *Id*. As another example, an officer's testimony was held to be mere opinion when he stated that he witnessed a truck following a car on the road and that he believed the distance between the truck and the car was insufficient and in violation of statute. *Id*.; *see also State v. Losoya*, 128 S.W.3d 413, 415 (Tex. App.—Austin 2004, pet. ref'd) (anonymous tip of "black male" involved in narcotics activities, combined with officer's knowledge from experience that area was active drug-trafficking center and defendant's "hasty" departure when he noticed officers, did not support reasonable suspicion that defendant was engaged in criminal activity).

Although each case must be decided on its own particular facts, a review of the decisions of other courts applying the law to similar facts leads us to conclude that this stop was not justified by reasonable suspicion. The court of criminal appeals has upheld temporary detentions

7

in the context of late hours or a high-crime area, where the State has identified additional facts that give rise to a reasonable suspicion. In *Amorella v. State*, police observed a car parked with its lights on and motor running outside a closed department store in a high-crime neighborhood at about 1:30 a.m. 554 S.W.2d 700, 701 (Tex. Crim. App. 1977). Two men were sitting in the vehicle and a third was standing by the open trunk. *Id*. When the third man saw the police car, he closed the trunk and got in the car, which began driving away. *Id*. The officer pulled over the car to investigate and arrested the defendant, one of the passengers, on an outstanding warrant. *Id*. The court of criminal appeals found the presence of the car parked next to a closed store, with the trunk open and the motor running, late at night, in a high-crime area, along with the furtive demeanor of the men,[2] amounted to circumstances that were "undeniably suspicious," and held the investigative detention was warranted. *Id*. at 702.

In *Meeks v. State*, police officers patrolling an area where there had been several recent automobile burglaries saw a man walking towards a car and away from a vacant lot where two trucks were parked. 653 S.W.2d 6, 8-9 (Tex. Crim. App. 1983). The man appeared to be carrying a handgun. *Id*. at 9. The officers stopped the man after he got in the car and began to drive away. *Id*. Upon brief investigation, they discovered stolen property in the car. *Id*. The court of criminal

_____

[2] Nervousness or evasive behavior has been found to be a pertinent factor in determining reasonable suspicion. In *Balentine v. State*, the officer arrived on the scene of a shots-fired call. 71 S.W.3d 763, 769 (Tex. Crim. App. 2002). He observed the defendant walking across the street nearby the complainant's residence. *Id*. It was approximately 2:30 in the morning in what the officer described as a residential, low-traffic area. *Id*. The defendant appeared nervous and was walking briskly away from the reported direction of the gunfire, while constantly looking back over his shoulder in the officer's direction. The officer's detention of the defendant was found to have been justified. *Id*.; *see also Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

appeals held that, because intentionally carrying a handgun was a violation of the penal code, the officers were justified in making an investigatory detention. *Id*. at 12; *see also* Tex. Pen. Code Ann. § 46.02 (West 2003); *Borner v. State*, 521 S.W.2d 852, 854 (Tex. Crim. App. 1975) (initial detention authorized when officers observed traffic violation).

The Houston court of appeals, fourteenth district, has held that police lacked reasonable suspicion on remarkably similar facts to the present case. *Klare v. State*, 76 S.W.3d 68 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). In *Klare*, a police officer spotted a white pickup truck parked in the back of a closed shopping center at around 2:30 a.m. *Id*. at 71. There had been burglaries in the area in the past. *Id*. The officer turned around to investigate because he found the parked vehicle suspicious. *Id*. The vehicle was gone by the time the officer arrived at the parking lot, but he soon found the pickup on an adjacent street. *Id*. At that time, he pulled the vehicle over and subsequently discovered that the driver was intoxicated. *Id*. Citing a wide variety of cases, the Houston court of appeals discussed the relevance of (1) the lateness of the hour, (2) the fact that the businesses were closed, (3) and that there had been burglaries in the area to the determination of reasonable suspicion. Based on an extensive review of the law, the court of appeals held that the mere presence of the pickup truck in the parking lot, without some additional fact that would arouse suspicion of criminal activity, fell short of supporting an objectively reasonable suspicion of criminal activity. *Id*. at 77.

The recent opinion by the Forth Worth court of appeals in *State v. Bryant* is also helpful in determining whether there was reasonable suspicion in that case. 161 S.W.3d 758 (Tex. App.—Fort Worth 2005, no pet.). In *Bryant*, the State appealed the granting of a motion to suppress

9

DWI evidence. *See id*. at 760. In that case, a police officer observed Bryant's car turn into a closed shopping center at around 2:00 a.m. *Id*. at 762. The area had experienced a number of burglaries in the past and store owners had complained about cars parking behind their stores. Bryant drove to the back, stopped between two buildings, and turned off his headlights. *Id*. The officer approached Bryant's parked car and knocked on the window. *Id*. When Bryant opened his car door, the officer noticed a strong smell of alcohol, that Bryant's pants were unzipped, and that he had "something all over him." *Id*. On these facts, the Fort Worth court of appeals did not hold that the officer had reasonable suspicion to detain Bryant at the time she knocked on his window. It was only after Bryant opened his door, revealing obvious signs of intoxication, that the court held there to be reasonable suspicion to detain him. *Id*.

Applying the standard of review to the facts before us now, we conclude that the State did not provide specific articulable facts observed by Officer Anderson sufficient to create some reasonable suspicion that, taken together with rational inferences from those facts, could have led her to conclude that the person detained actually was, had been, or soon would be engaged in criminal activity. *See Balentine*, 71 S.W.3d at 768. Officer Anderson testified that she saw a truck slowly driving through the parking lot of a closed business, late at night, in a dark area down the street from where windows of another business had been broken five weeks earlier. Officer Anderson testified that she did not witness any traffic violations or erratic driving and that Cronin was not trespassing. Nothing in the record indicates that there was anything suspicious about the appearance of the vehicle or its driver. Although Anderson was aware of the vandalism five weeks

10

earlier, she knew of no other criminal activity in the area for over a decade. This was not a high crime area.

The State contends that the recent vandalism in the area, the late hour, and the position of Cronin's vehicle in the parking lot justified Officer Anderson's suspicion that Cronin may have been "up to no good." Viewing the totality of the circumstances, we cannot conclude that the layout of the parking lot itself and the presence of the truck in it at night rises to the level of articulable facts justifying a reasonable suspicion that Cronin was, or soon would be, engaged in criminal activity. The case law consistently requires some additional fact other than the lateness of the hour, even in a high crime area, that would indicate criminal activity. *See*, *e.g.*, *Balentine*, 71 S.W.3d at 769 (nervous demeanor, walking briskly away from area where shots reported fired); *Amorella*, 554 S.W.2d at 702 (car parked near store in high crime area with motor running and trunk open, coupled with furtive demeanor); *Bryant*, 161 S.W.3d at 762 (car parked with lights out behind closed store were owners had complained and driver smelled of alcohol, had pants unzipped, and had something all over him); *Klare v. State*, 76 S.W.3d at 76-77. Although Officer Anderson was right to find Cronin's presence in the parking lot generally suspicious, there were no articulable facts suggesting that Cronin was engaged in criminal activity. *See Davis*, 947 S.W.2d at 244. Nothing linked Cronin's vehicle to the prior vandalism at a neighboring business, and there was no evidence that vandalism had taken place on the evening of the stop. Officer Anderson testified that she never observed Cronin commit any traffic violations, that he was not trespassing, and that he made no evasive or furtive gestures. His mere presence, coming from behind a closed restaurant, in an area near where there had been two windows broken five weeks earlier, even in the wee hours of the

11

morning, does not provide a reasonable basis for the detention. Nor does the fact that Officer

Anderson actually found drugs in Cronin's vehicle justify her detaining Cronin on only a hunch. *See*

*Wong Sun*, 371 U.S. at 484.

The district court and the dissent have both raised concerns that a finding of no

reasonable suspicion on these facts will hamper law enforcement from investigating suspicious

activity. However, our application of well established Fourth Amendment law does not lead to the

conclusion that police officers must bury their heads in the sand. Officers should not ignore their

experience and intuition. We also recognize that police are more effective when they are engaged

with the community and investigate even minor disorder. *See generally* James Q. Wilson, *Thinking*

*About Crime* 75-89 (Vintage Books 1985) (discussing "broken windows" theory and community

policing). But effective policing need not be at the expense of the Constitution. Police have a raft

of legitimate tools at their disposal to investigate suspicious activity short of investigative detention.[3]

As discussed in *Bryant*, not every interaction with the police is a detention. *See* 161 S.W.3d at 761.

Police are free to approach suspicious persons and vehicles in public spaces and make inquiries for

any reason or no reason at all. These interactions are simply encounters and do not implicate the

Fourth Amendment. *See id*. Even in the context of a suspicious moving vehicle, it is appropriate

---

[3] Court's should not minimize the significant restraints on a person's liberty that may be involved in an investigative detention. *See*, *e.g.*, *Illinois v. Cabellas*, 125 S.Ct. 834, 838 (2005) (sniff of vehicle by drug dog permissible during *Terry* stop); *Michigan v. Long*, 463 U.S. 1032, 1050 (1983) (protective sweep of vehicle permissible during *Terry* stop where reasonable concern for safety exists); *Balentine v. State*, 71 S.W.3d at 771 (no arrest where suspect placed in back of patrol car, handcuffed, criminal history checked, and subjected to thorough pat down search); *Hartman v. State*, 144 S.W.3d 568, 573-74 (Tex. App.—Austin 2004, no pet.) (extended detention to allow backup officer to conduct videotaped field sobriety test).

for police to check the suspicious vehicle's registration from the license plate number, *see Leach v. State*, 35 S.W.3d 232, 234 (Tex. App.—Austin 2000, no pet.), or even follow that vehicle to gather more information that might justify a stop. *See*, *e.g.*, *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992) (police followed vehicle from suspected drug house and properly detained occupants after witnessing traffic violation); *United States v. Castro*, 166 F.3d 728, 730-31 (5th Cir. 1999) (en banc) (officer properly stopped vehicle after following it for 115 miles before witnessing a traffic violation).

Because the State did not present articulable facts that would generate a reasonable suspicion that Cronin was, had been, or soon would be engaged in criminal activity, we find that the motion to suppress should have been granted. *See* Tex. Code Crim. Proc. art. 38.23(a) (West 2005). The judgment of the district court is reversed and the cause remanded for further proceedings consistent with this opinion.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton: Opinion by Justice B. A. Smith; Dissenting Opinion by Justice Pemberton

Reversed and Remanded

Filed: September 23, 2005

Publish