ACCEPTED
02-17-00272-CR
SECOND COURT OF APPEALS
FORT WORTH, TEXAS
5/25/2018 8:21 AM
DEBRA SPISAK
CLERK

**Cause No. 02-17-00272-CR**
In the Court of Appeals, Second District
Fort Worth, Texas

FILED IN
2nd COURT OF APPEALS
FORT WORTH, TEXAS

5/25/2018 8:21:57 AM
DEBRA SPISAK
Clerk

**Ricardo Lucio Silva,**
Appellant

v.

**The State of Texas,**
Appellee

Appeal from the 89th District Court of Wichita County, Texas
Trial Cause No. 57,985-C, The Honorable Charles Barnard Presiding

**Ricardo Lucio Silva's Brief**

Benjamin E. Hoover
Attorney for Appellant on Appeal
1401 Holliday, Suite 400
Wichita Falls, Texas 76301
State Bar No. 24052682
940-322-8200 Phone
940-228-3233 Fax
bhoover@thenixlawfirm.com

**Attorney for Appellant**
**Ricardo Lucio Silva**

**Oral Argument Not Requested**

**Identity of the Parties and Counsel**

Ricardo Lucio Silva, Appellant

Benjamin E. Hoover
Attorney for Appellant on Appeal
1401 Holliday, Suite 400
Wichita Falls, Texas 76301
bhoover@thenixlawfirm.com

Brennon Brady
Wichita County Public Defender
Attorney for Appellant at Trial
600 Scott Street, Suite 204
Wichita Falls, Texas 76301
brennon.brady@co.wichita.tx.us

Starla Jones
Attorney for the State at Trial
Assistant District Attorney
900 7th Street, Third Floor   Wichita Falls, Texas 76301
starla.jones@co.wichita.tx.us

Jennifer Ponder
Attorney for the State on Appeal
Assistant District Attorney
900 7th Street, Third Floor Wichita Falls, Texas 76301
jennifer.ponder@co.wichita.tx.us

Hon. Charles Barnard
Presiding Judge
89th District Court
900 7th Street
Wichita Falls, Texas 76301
charles.barnard@co.wichita.tx.us

# Table of Contents

Identity of The Parties & Counsel ……………………………….....2

Table of Contents …………………………………………………….3

Index of Authorities …………………………….………………………4

Statement Regarding Oral Argument…………………….…………..7

Statement of the Case…………………………………………………...7

Issues Presented ………………………...……………………………….8

   I.    Whether the trial court erred by denying Appellant's motion to suppress because he was unlawfully detained and the officer lacked reasonable suspicion or probable cause to search Appellant or his belongings.

   II.    Whether it was error to admit the untested substance into evidence over the objection of counsel because it harmed Appellant's presumption of innocence and was more prejudicial than probative.

   III.    Whether it was harmful error to exclude the Appellant's requested jury instruction in the Court's Charge concerning the untested substances contained in State's exhibits 7 and 8.

Statement of Facts ……………………………………………………..8

Summary of the Argument …………………………………………...10

Argument ……………………………………………………………11

   I.    The trial court erred by denying Appellant's motion to suppress because he was unlawfully detained and the officer lacked reasonable suspicion or probable cause to search Appellant or his belongings.…………………………………………………..11

  A. The officer lacked reasonable suspicion to believe that a crime had been committed or would be committed when he detained Appellant.

  B. It was unlawful to detain Appellant solely because he was located in an alleged "high crime area" at night.

  C. Appellant was not free to leave of his own will during the detention and his consent was not voluntary.

 II. It was error to admit the untested substance into evidence over the objection of counsel because it harmed Appellant's presumption of innocence and was more prejudicial than probative……………..20

 III. It was harmful error to exclude the Appellant's requested jury instruction in the Court's Charge concerning the untested substances contained in State's exhibits 7 and 8………………...24

Prayer …………………..…………………………………….…28

Certificate of Compliance………………………………………...28

Certificate of Service …………………………………………..29

**Index of Authorities**

**Constitutions**

Tex. Const. art. I. …………………………….………………13

U.S. Const. amend. IV ……………………………………13, 24

**Texas Rules & Codes**

Tex. Code Crim. Proc. art. 36.14………………………….……25

Tex. Code Crim. Proc. art. 36.15……………………..…………25

Tex R. Evid. 403…………………………………………..21-22

**Federal Cases**

4

*Arizona v. Gant,* 556 U.S. 332, 338 (2009)……………………………………13

*Delaware v. Prouse,* 440 U.S. 648 (1979) …………………………………14

*Florida v. Bostick*, 501 U.S. 429, 437 (1991)………………………………13

*Florida v. Royer*, 460 U.S. 491, 497 (1983)…………………………………18

*McDonald v. United States*, 335 U.S. 451 (1948) ………………………..13

*Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)…………………...19

*United States v. Brignoni-Ponce*, 422 U.S. 873, 881-82 (1975)………….12

*United States v. Robinson*, 414 U.S. 218 (1973) …………………………19

**Texas Cases**

*Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)(op. on
      reh'g)……………………………………………………………….24

*Arana v. State*, 1 S.W.3d 824, 826 (Tex. App.—Houston [14th Dist.] 1999,
      pet. ref'd.)……………………………………………………….24

*Chapman v. State*, 921 S.W.2d 694, 695 (Tex. Crim. App. 1996)……25-26

*Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010)………………18

*Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011)…..12

*Grisham v. State*, No. 03-14-00137-CR, 2017 WL 1130371, at *6 (Tex.
      App.—Austin, Mar. 23, 2017, no pet. h.) (mem. op., not designated
      for publication)…....................................................................25

*Gurrola v. State*, 877 S.W.2d 300, 302-03 (Tex. Crim. App. 1994)………18

*Gutierrez v. State*, 221 S.W.3d 680 (Tex. Crim. App., 2007) ……………13

*Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012)……….22

*Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002)……………..21

*Hudson v. State*, 205 S.W.3d 600, 604 (Tex. App.- Waco 2006,
     pet. ref'd)……………………………………………………………..18

*Jackson v. State*, 288 S.W.3d 60, 63 (Tex. App.—Houston [1st Dist.] 2009,
     pet. ref'd) …………………………………………………………..25

*Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995)…………18

*Klare v. State*, 76 S.W.3d 68, 73-74 (Tex. App.--Houston [14th Dist.] 2002,
     pet. ref'd)…………………………………………………………16

*Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002)…………..21

*Massingill v. State*, No. 11-14-00289-CR, 2016 WL 5853180, at *1 (Tex.
     App.--Eastland, Sept. 30, 2016, no pet. h) (mem. op., not designated
     for publication)…………………………………………………..21

*Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011)…………19

*Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999)…………..22

*Ngo v. State,* 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005)………….24

*Polk v. State*, 738 S.W.2d 274, 276 (Tex.Cr.App. 1987)…………………26

*Render v. State*, 347 S.W.3d 905, 921 (Tex. App.—Eastland 2011,
     pet. ref'd)…………………………………………………………21

*Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000)……………..21

*Schenekl v. State,* 30 S.W.3d 412 (Tex. Crim. App. 2000) ………………14

*Scott v. State*, 549 S.W.2d 170, 172-73 (Tex. Crim. App. 1976)………......16

*State v. Dixon*, 206 S.W.3d 587 (Tex. Crim. App. 2006) ………………12

*State v. Pena* , 464 S.W.3d 389 (Tex. App.—Corpus Christi 2014,
     pet. ref'd) ………………………………………………………12

*State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002)………………18

*State v. Sanchez*, 393 S.W.3d 798, 802 (Tex. App.--El Paso 2013, pet ref'd)………………………………………………………………24

*Stiles v. State*, 520 S.W.2d 894, 896-897 (Tex.Cr.App. 1975)……………26

*Stone v. State*, 703 S.W.2d 652, 655 (Tex.Cr.App. 1986)…………………26

*Vasquez v. State*, 919 S.W.2d 433, 435 (Tex. Crim. App. 1996)………24-25

*Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013)……………..12

*Weatherred v. State,* 15 S.W.3d 540, 542 (Tex. Crim. App. 2000)………..20

*Weems v. State,* 493 S.W.3d. 574 (Tex. Crim. App. 2016) ………………..11

*Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009) ....................21

## Statement Regarding Oral Argument

The Appellant does not request oral argument.

## Statement of the Case

Appellant was indicted for possession of a controlled substance, penalty group one, 1 gram or more but less than 4 grams, a felony offense. C.R. 1:6. Appellant's case was tried to a jury and he was convicted and a judgment entered by the trial court on July 26, 2017. C.R. 1:123-125. The jury determined Appellant had two prior felony convictions and he was sentenced to 45 years in the institutional division. C.R. 1:123-125. The trial court certified Appellant's right to appeal his conviction and sentence. C.R.

7

1:126. Appellant filed his Notice of Appeal and this is Appellant's Brief. C.R. 1:158.

## Issues Presented

I.  Whether the trial court erred by denying Appellant's motion to suppress because he was unlawfully detained and the officer lacked reasonable suspicion or probable cause to search Appellant or his belongings.

II.  Whether it was error to admit the untested substance into evidence over the objection of counsel because it harmed Appellant's presumption of innocence and was more prejudicial than probative.

III.  Whether it was harmful error to exclude the Appellant's requested jury instruction in the Court's Charge concerning the untested substances contained in State's exhibits 7 and 8.

## Statement of Facts

On January 21, 2016, around 9:30 p.m., Appellant and a female named Rebecca Bolf were walking in the 1600 block of Enterprise in Wichita Falls, Texas near a McDonald's. R.R. 4:87-88. The female was pushing a baby stroller down the street and walked into a field north of the street. R.R. 4:88. Appellant was walking westbound down the street pushing a dolly and met the female near the field and were talking to each other. R.R. 4:88. Officer Dozier of the Wichita Falls Police Department was sitting in a parking lot south of their location watching the Appellant and Ms. Bolf. R.R. 4:89.

After a few minutes, Appellant and Ms. Bolf walked together toward the Summit Apartment complex and entered an apartment. R.R. 4:89. Officer Dozier then drove into the apartment parking lot and exited his vehicle. R.R. 4:90. At the same time, Appellant and Ms. Bolf exited the apartment and Appellant was carrying a backpack and Ms. Bolf was pushing the baby stroller. R.R. 4:91. Officer Dozier approached the two people and detained them. R.R. 4:48. The reason Officer Dozier detained them was because he believed their behavior was suspicious and he believed they might have been involved in burglary or theft. R.R. 4:46. Officer Dozier did not see them commit a crime prior to detaining them. R.R. 4:47.

Officer Dozier asked for permission to search the backpack Appellant was holding and Appellant stated "sure." R.R. 4:105. The officers learned through dispatch that Appellant had three city arrest warrants. R.R. 4:106. Officer Dozier dug through the backpack and found a small magnetic key holder containing a plastic baggy with a substance later determined to be methamphetamine by a DPS scientist. R.R. 4:106, 121-122. Officer Felts then searched Appellant's person. R.R. 4:109. Officer Felts searched Appellant's pocket and found an Altoids tin. R.R. 4:110. Inside the Altoids tin were found two small plastic baggies that each contained a white, crystal like substance. R.R. 4:112. The two baggies of crystal substance found in

9

the Altoids tin were not tested at the lab. R.R. 4:177. The backpack was given to the female subject after Appellant was arrested. R.R. 4:115. Appellant was then transported to the Wichita County jail and charged with possession of a controlled substance. R.R. 4:116

## Summary of the Argument

The trial court abused its discretion by failing to suppress any evidence seized from the backpack and Appellant's person because it was unlawfully seized without a warrant and there was no valid exception to the warrant requirement. Officer Dozier unlawfully detained appellant without reasonable suspicion of criminal activity. The officer could have sought a search warrant for the backpack but instead made an unlawful search of it and Appellant's pockets. The trial court's decision should be overruled on the basis that it was unreasonable, outside the zone of reasonable disagreement and incorrect because there was no reasonable suspicion to detain and no valid warrant exception applied.

It was error to admit the untested substance, alleged to be methamphetamine, into evidence. Said evidence was admitted over the objection of counsel and was more prejudicial than probative. The two baggies of untested white substance served to confuse the issues, tended to mislead the jury and served as cumulative evidence. The untested substance

10

did not serve any valid purpose other than to create an unfounded bias in the minds of the jurors and convince them, without sufficient proof, that the substance was in fact methamphetamine.

It was error to exclude Appellant's requested jury instruction concerning the untested substance. The instruction would have served to lessen the harm created by admitting the untested substance and would have given a proper explanation to the jury concerning how to view the evidence and apply the burden of proof.

**Argument**

I.    **The trial court erred by denying Appellant's motion to suppress because he was unlawfully detained and the officer lacked reasonable suspicion or probable cause to search Appellant or his belongings.**

**Applicable Law**

*Standard of Review*: A trial court's ruling on a motion to suppress is reviewed under an abuse of discretion standard, using a bifurcated standard of review. *Weems v. State,* 493 S.W.3d. 574, 576–78 (Tex. Crim. App. 2016). Deference is given to the trial court when it determines historical facts or mixed questions of law and fact which rely upon the credibility of a witness. *Id.* The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony. *Id.* However, all questions of law and mixed questions that do not depend on credibility

determinations are reviewed *de novo*. *Id.* The trial court's ruling will be upheld if it is reasonably supported by the record and correct on any theory of law applicable to the case. *State v. Pena*, 464 S.W.3d 389, 395 (Tex. App.—Corpus Christi 2014, pet. ref'd). Appellate courts will review the record in a light most favorable to the trial court's ruling, and will reverse the judgment if the decision is arbitrary, unreasonable, or "outside the zone of reasonable disagreement." *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

**A.  The officer lacked reasonable suspicion to believe that a crime had been committed or would be committed when he detained Appellant.**

Reasonable suspicion of criminal activity allows a temporary seizure for questioning that is limited to the reason for the seizure. *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013)(citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 881-82 (1975)). "A police officer has reasonable suspicion for a detention if he has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Id* (citing *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). This objective standard disregards the

12

actual subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention. *Id*.

The court must review the totality of the circumstances, whereby, individual circumstances may seem innocent enough in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified. *Id.* Reasonable suspicion exists if the information is sufficiently detailed and reliable-- i.e., it supports more than an inarticulate hunch or intuition--to suggest that something of an apparently criminal nature is brewing. *Id.* A person's refusal to cooperate with a police request during a consensual encounter cannot, by itself, provide the basis for a detention. *Florida v. Bostick*, 501 U.S. 429, 437 (1991).

An individual has the right to be free from unreasonable searches and seizures under both the United States and Texas Constitutions. U.S. Const. amend. IV; Tex. Const. art. I. Sec. 9. A warrantless search is per se unreasonable but for a few well-delineated exceptions. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). The State carries the burden of proving that a warrantless search falls within one of these exceptions. *McDonald v. United States*, 335 U.S. 451, 454-55 (1948).

"The Fourth Amendment grants individuals "the right . . . to be secure in their persons, houses, papers, and effects, against unreasonable searches

and seizures.'"" *Gutierrez v. State*, 221 S.W.3d 680, 684-85 (Tex. Crim. App., 2007)(citing U.S. Const. amend. IV.). "In determining the reasonableness of a search or seizure, the actions of police are judged by balancing the individual's privacy interest against the Government's interest in law enforcement. The balancing test is utilized to ensure that an individual's Fourth Amendment rights are not subjected to "arbitrary invasions at the unfettered discretion of officers in the field.'"" *Id* at 685 (citing *Schenekl v. State,* 30 S.W.3d 412, 413 (Tex. Crim.App.2000); and *Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)).

Here, Officer Dozier's initial suspicion arose from the female pushing a baby stroller down the street behind the McDonald's. R.R. 4:43. He then watched Appellant walk down Enterprise Street toward the north end of the field and converse with the female for a few minutes. R.R. 4:44. The officer did not recognize the female at the time he was watching them. R.R. 4:45. The officer thought he "may have had a dealing with [Silva] before." R.R. 4:45. The officer's belief they could have been burglarizing or possessing stolen items was based on "a speculation, a hunch." R.R. 4:46. The officer did not know whether either of the two lived in the area. R.R. 4:46. Officer Dozier did not observe their actions 10 minutes before this and

14

did not witness anything illegal before talking to these individuals. R.R. 4:47.

Officer Dozier admitted that he stopped and detained the two subjects based on their interaction on Enterprise Street and in conversing in the field. R.R. 4:47. The officer was <u>not</u> aware the two had allegedly been digging in trashcans at the point he detained them. R.R. 4:48. The two subjects were stopped and detained by Officer Dozier at the outset of the police encounter. R.R. 4:48. They were detained so that Officer Dozier could investigate his "hunch" that the two were either burglarizing or possessing stolen property. R.R. 4:48. The officer asked for their ID's shortly after detaining them. R.R. 4:49.

The lawful and innocuous actions of Appellant prior to being detained did not rise to the level of reasonable suspicion in light of the totality of circumstances. Officer Dozier had only observed the two for a few minutes and admittedly did not observe any illegal behavior. He did not know whether they lived nearby or whether they had been customers at the McDonald's approximately ten minutes before he detained them. The sole basis for the detention was his "hunch" of illegal activity. Therefore, the officer did not have a lawful basis to detain Appellant at that time.

**B. It was unlawful to detain Appellant solely because he was located in an alleged "high crime area" at night.**

*"*Neither time of day nor level of criminal activity in an area are suspicious in and of themselves; the two are merely factors to be considered in making a determination of reasonable suspicion." *Id* at 53 (citing *Scott v. State*, 549 S.W.2d 170, 172-73 (Tex. Crim. App. 1976)). Neither fact proves that the suspect is engaged in criminal activity. *Id* (citing *Klare v. State*, 76 S.W.3d 68, 73-74 (Tex. App.--Houston [14th Dist.] 2002, pet. ref'd.)). The surroundings must raise a suspicion that the particular person is engaged in illegal behavior for these facts to affect the assessment of the person's actions. *Id.*

In the present case, Officer Dozier was working third shift from 6:30 p.m. to 6:30 a.m. R.R. 4:45. He spotted the two subjects outside together after dark in a field near McDonald's. R.R. 4:8. The detention of the two subjects occurred around 21:36 hours (9:36 p.m.). C.R. 1:12. The officer's testimony concerning the crime rate in the immediate area reads as follows:

Q. Did anything about that seem suspicious or strange to you?

A. Yes.

Q. What?

A. Just there was several businesses in that area, the fact that, you know, they entered the field and met up, but they were both separated at that time and then entering the apartment complex together with those items, you know, at that time, I potentially

16

thought they stole them or were about to commit a burglary or theft.

Q. Does that -- does that area have a problem with that?

A. Yes.

Q. Specifically, that apartment complex?

A. Yes.

Q. Either shortly before or shortly after this event, had you arrested other subjects for burglary of a vehicle in that same apartment complex? Yes. Do you often see people push around empty baby strollers and dollies?

A. No.

R.R. 4:9.

Officer Dozier provided minimal information concerning crime in the area to support his contention that their actions were suspicious. The State did not offer any data or statistics to justify a claim this area was a "high crime area".

Even if the arrest area were deemed to be a "high crime area", it did not justify the detention. At the time the officer approached and detained Appellant, all he knew was that he was pushing a dolly, at night, near an apartment complex. He did not testify that he observed Appellant carrying any items or breaking into any buildings. These facts alone did not create reasonable suspicion that Appellant was involved in criminal activity. Accordingly, the detention was unlawful and any subsequent search,

17

whether by consent, stop and frisk for officer safety, or incident to arrest, was unjustified.

**C.    Appellant was not free to leave of his own will during the detention and his consent was not voluntary.**

There are three distinct categories of interactions between police officers and citizens: (1) encounters, (2) investigative detentions, and (3) arrests. *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010)(citing *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002)). Courts look at the totality of the circumstances to determine which category an interaction falls into. *Id* (citing *Gurrola v. State*, 877 S.W.2d 300, 302-03 (Tex. Crim. App. 1994)). An encounter is a consensual interaction that the citizen is free to terminate at any time. *Id* (citing *Florida v. Royer*, 460 U.S. 491, 497 (1983)). Unlike an investigative detention and an arrest, an encounter is not considered a seizure that would trigger Fourth Amendment protection. *Perez*, 85 S.W.3d at 819.

Alternatively, an investigative detention occurs in response to a police officer's show of authority under a reasonable belief that a person is not free to leave. *Crain*, 315 S.W.3d at 49 (citing *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). To determine whether the interaction constituted an encounter or a detention, the court focuses on whether the officer conveyed a message that compliance with the officer's request was

required.  *Id* (citing *Hudson v. State*, 205 S.W.3d 600, 604 (Tex. App.- Waco 2006, pet. ref'd). The question is whether a reasonable person in the citizen's position would have felt free to decline the officer's requests or otherwise terminate the encounter.  *Id*.

Texas courts have consistently held there is a "strong preference for searches to be administered pursuant to a warrant.  *Id*.  Even though warrant exceptions exist, "the warrant requirement is not lightly set aside, and the State shoulders the burden to prove that an exception to the warrant requirement applies."  *Id* (citing *United States v. Robinson,* 414 U.S. 218, 243 (1973).

One of those exceptions is a search conducted with the person's voluntary consent.  *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011)(citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).  "The validity of a consent to search is a question of fact to be determined from all the circumstances."  *Id*.  "A person's consent to search can be communicated to law enforcement in a variety of ways, including by words, action, or circumstantial evidence showing implied consent."  *Id*.  "But the Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force."  *Id* at 459.  "The voluntariness of a person's consent is also a question of fact that is

determined by analyzing all of the circumstances of a particular situation." *Id.* "The trial judge must conduct a careful sifting and balancing of the unique facts and circumstances of each case in deciding whether a particular consent search was voluntary or coerced."

In the present case, Officer Dozier used a show of force to detain Appellant. The officer admitted in the suppression hearing that he believed the two subjects might have been involved in burglary or theft that evening. R.R. 4:46. Although his belief was unsubstantiated at the time, the officer exerted authority over Appellant at the outset when he detained him. R.R. 4:48. The facts described at the hearing and evidenced by the video would lead a reasonable person to conclude that Appellant was subject to the officer's authority from the outset and was not free to leave. He succumbed to the officer's authority and was overcome by his fear and nervousness by being detained in front of the apartment. Despite the Appellant stating "sure" in response to the request to search the backpack, the totality of circumstances lean in favor of this being a case of involuntary consent.

**II.  It was error to admit the untested substance into evidence over the objection of counsel because it harmed Appellant's presumption of innocence and was more prejudicial than probative.**

**Applicable Law**

*Standard of Review*:  An appellate court reviewing a trial court's

20

ruling on the admissibility of evidence must utilize an abuse of discretion standard of review. *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). In other words, the appellate court must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.* The appellate court will uphold the trial court's ruling on the admission or exclusion of evidence if the ruling was proper under any legal theory or basis applicable to the case. *Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002).

Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay or needless presentation of cumulative evidence. *Massingill v. State*, No. 11-14-00289-CR, 2016 WL 5853180 at *1 (Tex. App.--Eastland, Sept. 30, 2016, no pet. h) (mem. op., not designated for publication); TEX. R. EVID. 403; *see Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009). Rule 403 favors admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002); *Render v. State*, 347 S.W.3d 905, 921 (Tex. App.—Eastland 2011, pet. ref'd). Evidence is unfairly prejudicial when it has the undue tendency to suggest an improper

21

basis for reaching a decision. *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000); *Render*, 347 S.W.3d at 921. In reviewing a trial court's determination under Rule 403, a reviewing court is to reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999). An analysis under Rule 403 includes, but is not limited to, the following factors: (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational yet indelible way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012).

Here, admission of the untested substance in Exhibits 7 and 8 was much more prejudicial than probative. The State offered the Altoids tin that contained the baggies of clear crystal like substance over Appellant's objection. R.R. 4:110-11. The court later allowed admission of the two baggies of untested crystal substance found within the Altoids tin along with the tested substance from the magnetic key holder. R.R. 4:179. The officer described the exhibits as containing a white crystal like substance found in baggies. R.R. 4:112. By allowing admission of the untested substance, the jury was permitted to consider it as evidence of Appellant's guilt. This was overly prejudicial because it was possible that the untested substance was

not in fact methamphetamine.

The jury was left with the unfair impression that because the untested substance was permitted, the court therefore approved of both its admissibility and reliability. This is problematic because the State must prove that any substance is in fact what it is alleged to be, i.e. methamphetamine. It's possible the jury might have disbelieved that Exhibit 5 (substance tested by DPS forensic scientist Ashley Zelinski) was in fact methamphetamine, despite the testimony of the scientist. Theoretically, the jury could have found that the tested substance was not proven beyond a reasonable doubt, but then also have believed that the untested substance was methamphetamine, when in fact it was not. This would lead to confusion amongst the jury and a wrongful conviction against Appellant. To avoid this confusion or prejudice against Appellant, the court should have disallowed admission of the untested substances. The State's forensic scientist testified it was DPS policy not to test all of the submitted substances when, such as here, several were submitted. R.R. 4:177. Appellant should not be harmed by the State's unilateral decision that it takes too much effort to test all of the substances that are used against him. The untested substance only served to impress the jury in an irrational and indelible way and the State's need for the evidence did not outweigh its

23

potential for harm. In addition, admission of the untested substance was a violation of Appellant's rights under the fourth and fourteenth amendments to the U.S. Constitution and also the Texas Constitution.

**III. It was harmful error to exclude the Appellant's requested jury instruction in the Court's Charge concerning the untested substances contained in State's exhibits 7 and 8.**

**Applicable Law**

*Standard of Review:* Charge error is reviewed on appeal by determining whether error occurred, and if so, whether that error caused sufficient harm to require reversal. *State v. Sanchez*, 393 S.W.3d 798, 802 (Tex. App.--El Paso 2013, pet ref'd)(citing *Ngo v. State,* 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *see Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015)). The degree of harm required for reversal depends on whether the defendant preserved error at trial. *Ngo* at 743. When the defendant preserves error at trial by timely objection, the record must establish only "some harm" to obtain reversal. *Id.* (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)(op. on reh'g)).

Jury charge error may be preserved by asserting either an objection or a requested charge. *Arana v. State*, 1 S.W.3d 824, 826 (Tex. App.— Houston [14th Dist.] 1999, pet. ref'd)(citing *Vasquez v. State*, 919 S.W.2d 433, 435 (Tex. Crim. App. 1996)). Objections and special requested

instructions must both be submitted in writing or dictated to the court reporter before the charge is read to the jury. *See* Tex. Code Crim. Proc. arts. 36.14, 36.15. An adverse ruling must be obtained to preserve error on an objection but not on a special requested instruction that is called to the trial court's attention. See *Vasquez*, 919 S.W.2d at 435. If a defendant either asserts objections, requests instructions, or both, and the trial court thereafter modifies the charge but does not respond to all of the objections or requested charges, then the unresponded to objections or requested charges are not deemed waived by the defendant unless the contrary is shown by the record. *Id*.

The trial court must provide the jury with "a written charge distinctly setting forth the law applicable to the case." Tex. Code Crim. Proc. art. 36.14; *Grisham v. State*, No. 03-14-00137-CR, 2017 WL 1130371, at *6 (Tex. App.—Austin Mar. 23, 2017, no pet. h.) (mem. op., not designated for publication). "A defendant preserves error if the requested charge is specific enough to put the trial court on notice of the omission or error in the charge, and the requested charge need not be 'in perfect form' but only sufficient enough to bring the request to the trial court's attention." *Jackson v. State*, 288 S.W.3d 60, 63 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (quoting *Chapman v. State*, 921 S.W.2d 694, 695 (Tex. Crim. App. 1996)).

In deciding whether the trial court understood the request for an instruction, the record must be examined for statements by the trial court that reflect what its understanding was, the general theme of the defense evidence, the various defensive theories presented at the trial, and anything else that may shed light on whether the trial court understood the objection. *Id*.

A defendant is not required to request an instruction in perfect form. *Stone v. State*, 703 S.W.2d 652, 655 (Tex.Cr.App. 1986); Tex. Code Crim. Proc. art. 36.15; (*see Chapman* at 695). The requested charge must only be sufficient to call the trial court's attention to the omission in the court's charge. *Id.* (citing *Stiles v. State*, 520 S.W.2d 894, 896-897 (Tex.Cr.App. 1975). The appellant in *Stone* prevailed because his requested instruction was sufficient to apprise the trial judge of the objection to the charge. *Id*. (see *Polk v. State*, 738 S.W.2d 274, 276 (Tex.Cr.App. 1987).

In the present case, the trial court permitted admission of the white crystal like untested substance but disallowed the requested jury instruction. At the charge conference, Appellant's counsel submitted the following written request: "You are instructed that the State has failed to prove the contents of states exhibit 7 and 8 to be a controlled substance and you cannot consider the substance to be methamphetamine in arriving at your verdict." C.R. 1:113. Appellant's counsel articulated the reasoning behind the

26

requested instruction by stating:

> MR. BRADY: Yes, Judge. Just like my objection to the evidence earlier, the lab results, there's been no analysis on this. They're going to try to get up there and say it is methamphetamine and he's connected to it and you can infer that it's methamphetamine. And that's, you know, connecting him to stuff that's in the bag. Well, they haven't proven that beyond a reasonable doubt. And in order for them to have an extraneous offense that they consider, it has to be proven beyond a reasonable doubt. And that would be my other instruction that I would ask for if this one is denied. And so they cannot consider an extraneous offense that has not been committed beyond a reasonable doubt. R.R. 5:13

By disallowing the requested jury charge instruction, the trial court failed to properly explain the admitted evidence, and likely caused confusion on the part of the jurors. The untested substance in exhibits 7 and 8 was not proven beyond a reasonable doubt to be methamphetamine. However, the impression left with the jurors was that it was purported to be methamphetamine and both the state and the court sponsored its admissibility and reliability. The state's need for the evidence was greatly outweighed by the potential harm. The requested limiting instruction would have served to partially remediate the harm created by admitting exhibits 7 and 8 over Appellant's objection.

The trial Court's decision to deny Appellant's motion to suppress was incorrect and was outside the zone of reasonable disagreement and constituted an abuse of discretion. It was error for the trial court to allow the

27

untested substance to be admitted and displayed before the jury because it was overly prejudicial. Lastly, it was harmful error to disallow the requested charge instruction that would have lessened the harm created by admitting and displaying the untested substance that was purported to be methamphetamine.

## PRAYER

The Appellant prays that the Court of Appeals, Second District, reverse the judgment of the 89th District Court of Wichita County, Texas.

Respectfully submitted,

Benjamin E. Hoover
The Nix Law Firm
1401 Holliday, Suite 400
Wichita Falls, Texas 76301
Tel 940.322.9200
Fax 940.228.3233
bhoover@thenixlawfirm.com

By:   /s/ Benjamin E Hoover
Benjamin E. Hoover
State Bar No. 24052682
Attorney for Appellant

## <u>CERTIFICATE OF COMPLIANCE</u>

I, the undersigned, certify that this document was produced on a computer using Microsoft Word and contains 4,116 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

## CERTIFICATE OF SERVICE

On the 25th day of May, 2018, a copy of the foregoing document was served upon the following parties by electronic service and the transmission was reported as complete:

Jennifer Ponder
Wichita County District Attorney's Office
900 7th Street
Wichita Falls, Texas 76301
jennifer.ponder@co.wichita.tx.us

/s/ Benjamin E. Hoover
Benjamin E. Hoover